TEXAS & PACIFIC RAILWAY COMPANY V. MRS.
E. A. LEIGHTY ET AL.

No. 326.

**Rule Interpreted by Circumstances.**

The railroad published an order requiring that its trains be stopped near to, and then run under full control to Choctaw gravel pit, a siding station, where cars were being loaded with gravel in the day-time. In the night a freight train collided with a car left without signal light, partly on the side track and partly on the main track. The conductor on the freight train was killed. In suit by his widow and children against the railway company for damages, it was competent to show that work at the gravel pit was carried on only in the day-time, and that operatives construed the order to apply only to day trains. The language of the rule or order, read in the light of the circumstances, being such as to render it reasonably susceptible of the construction that it was not intended to be applicable to night trains, it was therefore an issue of fact whether the deceased was guilty of contributory negligence in so construing said rule, and in running his train without stopping, through the Choctaw yard and to the gravel pit........ 606

ERROR to Court of Civil Appeals for Fifth District, in an appeal from Fannin County.

*Dillard & Muse*, for plaintiff in error.—The employes of the railway could not vary or abrogate a rule promulgated by the company by a habit or custom among themselves. Railway v. Lynch, 8 Texas Civ. App., 513; Railway v. Ryan, 69 Texas, 665.

*Taylor, Galloway & McGrady*, for defendants in error.—1. If it was an established custom of the employes of defendant to violate said rule, known and acquiesced in by the superior officers of the company, the deceased would not be guilty of contributory negligence on that account.

2. If the servants continuously, and by a belief that said rule did not apply to night-time runs on trains running east, violated said rule,

and this belief and action of said servants was general, and the company's officers knew of such action, then such action would amount to an abandonment of such rule, so far as it related to east-bound trains at night.

3. Notice to the company of such action and custom of the employes, may be inferred from the length of time said custom was in operation and the general notoriety and use of same, and the jury were entitled to all the facts and circumstances to assist them in arriving at a proper conclusion.

DENMAN, ASSOCIATE JUSTICE.—On the night of March 23, 1892, Emmet A. Leighty, engineer of a freight train on the road of plaintiff in error, while running his engine along the main track, through the yard limits of Choctaw siding, ran the same against the tender of an engine that had been left standing partly on the main track and partly on a side track, connected with said main track by a switch, whereby his engine was overturned, inflicting upon him injuries resulting in his death. The tender had been left, as above stated, by Brown, a hostler at Choctaw switch, without any lights thereon to indicate its position, and the night was dark.

Defendants in error sued for damages resulting to them from the death of Leighty. On the trial, plaintiff in error introduced in evidence a rule which had been duly promulgated by it at its date, under circumstances charging Leighty with notice thereof, as follows, to wit:

"TEXARKANA, TEXAS, October 7, 1891."

"ALL TRAINS WEST BONHAM—ALL TRAINS EAST WHITESBORO.—There has been a telegraph office established at Choctaw gravel pit, located just west of the tank. East-bound trains will bring trains to a full stop just west of this office, and will run from there to Choctaw siding with trains under full control. West-bound trains will approach Choctaw siding with trains under full control, and will run carefully between Choctaw siding and Choctaw pit telegraph office, expecting to find work trains using the main line. All trains will look out for signal board at Choctaw pit office.

"E. W. CAMPBELL, Train Master."

Plaintiff in error requested the court to give the following charge: "The rule read in evidence before you, requiring all east-bound trains to come to a full stop just west of the telegraph office at Choctaw gravel pit, and to be run thence east under full control to Choctaw siding, was a reasonable and proper rule; and if you believe that E. A. Leighty, by the use of such care as under similar circumstances would have been exercised by a person of ordinary caution, could have complied with the requirements of such rule, and if you believe he failed to use such care and disobeyed such requirements, and that such failure to use said degree of care and obey said requirements.

directly and proximately contributed to his injury, then your verdict must be for the defendant. By the words above used, 'directly and proximately contributed to his injury,' is meant, an omission or commission of an act by said Leighty, but for which act of omission or commission, as the case may be, his injury would not have occurred."

The refusal of the court to give this charge is here assigned as error.

There was much evidence tending to show, that from the time of the promulgation of said rule until the date of the accident, the employes construed it as having no application to night trains. On this issue the evidence tended to show, that the work trains were used on the main line only in the day-time, being placed upon the side track at night, save in exceptional cases; that at night there was no "signal board" in use to "look out" for, as the telegraph office was always closed at night, and the operator who managed the signal board was not there; that the purpose of placing the telegraph office there and the promulgation of said rule was to prevent collisions with the "work trains;" and that in fact all the employes understood the rule as having no application to night trains.

The special charge requested would not have permitted a recovery by defendants in error, in any event, if the jury believed that Leighty, by the use of reasonable care, could have complied with the rule, and that his failure to comply therewith directly contributed to his injury; thus precluding a recovery, though the jury might believe from the evidence that the deceased, in the exercise of due care, in good faith believed the rule had no application to night trains, and acted upon such belief.

We are of the opinion that the language of the rule, when read in the light of the purpose and circumstances inducing its promulgation, is such as to render it reasonably susceptible of the construction, that it was not intended to be applicable to night trains.

This being so, it was a question of fact for the jury to determine whether the deceased was guilty of contributory negligence in so construing same, and running his east-bound train through Choctaw yards without stopping west of the telegraph office, and having it "under full control."

The question for the jury was not what is the proper construction of the rule, but whether, under all the circumstances, deceased was guilty of contributory negligence.

The rule being reasonably susceptible of two constructions, if the deceased, when called upon, in the discharge of the duties of his employment, to apply the same to the circumstances surrounding him and contemplated by such rule, acting with reasonable care, in good faith, construed same as having no application to night trains, he was not guilty of contributory negligence, though such construction be in fact erroneous.

We are therefore of the opinion that the special charge was correctly refused.

That part of the charge of the court submitting the question of the abrogation of the rule to the jury not being assigned as error here, and the special charge asked by plaintiff in error having been properly refused, for the reasons above indicated, we are not called upon to determine whether the evidence tending to show an almost uniform violation by the employes of a rule applicable only to one small station, where the general officers of the company are not presumed to be, was sufficient, on the issue of contributory negligence here raised in a suit by one of such employes against the company, and in the absence of any other evidence tending to show that any general officer of the company had knowledge of such violation, to have authorized the submission to the jury of the issue as to whether the company had notice of such violation and acquiesced therein, thereby abrogating the rule.

There being no merit in the other assignments, the judgments will be affirmed.

*Affirmed.*

Delivered November 4, 1895.