SHEPARD v. PAYNE, Agent.

No. 3657.   Decided May 2, 1922.   (206 Pac. 1098.)

1. APPEAL AND ERROR—REPETITION OF UNIMPORTANT TESTIMONY HELD HARMLESS ERROR.   Where, when a question calling for evidence was first asked, defendant's counsel considered it of no importance, and did not interpose an objection, it cannot on appeal, because of unnecessary repetition, be magnified into reversible error.

2. MASTER AND SERVANT—TESTIMONY AS TO SECTION FOREMAN'S DUTY UNDER RULE TO INSPECT HAND CAR HELD ADMISSIBLE.   In a section foreman's action for injuries from the derailment of a hand car, held, that a rule requiring weekly inspection of hand cars for loose bolts and other defects did not require an inspection of the wheels of a new hand car to see whether they were properly gauged to fit the track, so that plaintiff's testimony that section men were never known to examine a hand car as to gauge was in support of the rule, even if the testimony was immaterial; but if the rule was ambiguous the testimony was admissible on the question as to whether the rule was intended to require an inspection of all parts.

3. MASTER AND SERVANT—ORDINARY CARE REQUIRED TO FURNISH HAND CAR REASONABLY SAFE.   It is the duty of a railroad company to use ordinary care to furnish its section foreman a hand car that is reasonably safe for the purpose intended.

4. MASTER AND SERVANT—QUESTION OF PATENT DEFECT IN HAND CAR HELD FOR JURY.   In a section foreman's action for personal in-

juries from the derailment of a hand car, evidence *held* to make it a jury question whether the defect in the gauge of the wheels was so patent that plaintiffs should have known of it.

5. MASTER AND SERVANT—RISK ASSUMED UNDER FEDERAL ACT. Under the federal Employers' Liability Act (U. S. Comp. St. §§ 8657-8665) a servant assumes the same risks that he assumed at common law.

6. MASTER AND SERVANT—RISK ASSUMED WITHOUT ACTUAL KNOWLEDGE. An instruction that, before servant could be held to have assumed the risks, it must be shown by a preponderance of the evidence that he, by reason of experience or from actual notice or knowledge, understood and appreciated such risks and dangers is erroneous, since he is presumed to have had notice when by the exercise of ordinary care he would have known of the fact or occurrence in question, and the law imposes notice on the theory that one knows what it is his duty to know.

7. MASTER AND SERVANT—DOCTRINE OF ASSUMPTION OF RISK STATED. A servant entering a given employment appreciates all risks normally incident thereto, and his accepting the employment appreciating risks normally involved warrants the inference that he agrees by implication to relieve the master of all responsibility for such injuries as may result from their existence, the consideration for this implied agreement being the compensation stipulated, which is supposed to be sufficient to indemnify the servant for the ever present possibility of injury.[1]

8. APPEAL AND ERROR—INSTRUCTION ERRONEOUS BECAUSE EXCLUDING WHAT SERVANT WAS PRESUMED TO KNOW HELD NOT PREJUDICIAL OR REVERSIBLE ERROR. In a section foreman's action against a railroad company for personal injuries, an instruction which was erroneous because not taking into account that the servant is presumed to know what he should have known in regard to risks *held* not controlling, and not prejudicial or reversible error; plaintiff not having assumed the risk as a matter of law.

9. MASTER AND SERVANT—VIOLATION OF RULE HABITUALLY DISREGARDED NOT CONTRIBUTORY NEGLIGENCE. The doctrine that, where the evidence clearly shows that an injury complained of was caused by servant's violation of master's rule promulgated for the protection of the class of employees to which such servant

---

[1] *Toone* v. *O'Neill Const. Co.*, 40 Utah, 284, 121 Pac. 10; *Kuchenmeister* v. *Railroad*, 52 Utah, 126, 127, 172 Pac. 725.

belongs, he is .guilty of contributory negligence as matter of law, is subject to the exception that, when the master has habitually, either expressly or tacitly, sanctioned the violation of the rule, or for any reason has suspended it, the master cannot interpose such violation to defeat recovery.[2]

10. MASTER AND SERVANT—VIOLATION OF RULE SUSCEPTIBLE TO TWO INTERPRETATIONS NOT CONTRIBUTORY NEGLIGENCE. Where a master's rule promulgated for the protection of the class of employees to which the injured servant belongs is susceptible of two constructions, and the servant in good faith puts a certain meaning upon it, and is injured because of its violation by him, he is not guilty of contributory negligence as a matter of law.

11. MASTER AND SERVANT—QUESTION OF CONTRIBUTORY NEGLIGENCE IN FAILING TO INSPECT HAND CAR HELD FOR JURY. In a section foreman's action for injuries from derailment of a hand car, plaintiff's contributory negligence in failing to obey a rule requiring inspection by which he would have discovered that the wheels were not of the proper gauge *held* for the jury.

12. APPEAL AND ERROR—VERDICT MAY NOT BE SET ASIDE SOLELY BECAUSE EXCESSIVE. Conceding that a verdict for personal injuries is excessive, more than some other jury might have found, and more than the Supreme Court judges had they been jurors would have allowed, such excessiveness in and of ofself is not enough to require a reversal.[3]

13. DAMAGES—$10,000 VERDICT FOR INJURY TO HAND HELD EXCESSIVE, AND ORDERED REDUCED TO $7,500. Where plaintiff section foreman was 50 years old, ahd earning $105 per month, in addition to which he was furnished fuel and a house in which to live, and he suffered a fracture of the wrist, the joint, being practically solid and the muscles that extend the fingers being contracted, and at the time of trial he could not use his hand, was still suffering pain, and the palm of the hand felt paralyzed, but there was testimony that this would not prevent him from performing the duties of section foreman, *held* that a verdict for $10,000 should be reduced by remittitur under Comp. Laws Utah 1917, § 6995, to $7,500.

---

[2] *Boyle* v. *U. P. R. R.*, 25 Utah, 420, 71 Pac. 989; *Wright* v. *S. P. Co.*, 14 Utah, 393, 46 Pac. 374; *Konold* v. *R. G. W. R. R.*, 21 Utah, 381, 60 Pac. 1021, 81 Am. St. Rep. 693.

[3] *Eleganti* v. *Standard Coal Co.*, 50 Utah, 585, 168 Pac. 266; *Stephens Ranch & L. S. Co.* v. *U. P. R. R.*, 48 Utah, 528, 161 Pac. 459; *Jensen* v. *D. & R. G. R. R.*, 44 Utah, 100, 138 Pac. 1185.

Appeal from District Court, Third District, Salt Lake County; *Wm. H. Bramel,* Judge.

Action by Charles Shepard against John Barton Payne, as Agent under the Transportation Act of 1920, § 206 (41 Stat. 461). Judgment for the plaintiff, and the defendant appeals.

AFFIRMED on condition of filing a remittitur, otherwise a new trial will be granted to defendant unconditionally.

*George H. Smith, John V. Lyle,* and *R. B. Porter,* all of Salt Lake City, for appellant.

*Marioneaux & Beck* and *Willard Hanson,* all of Salt Lake City, for respondent.

WEBER, J.

Plaintiff was a section foreman in defendant's employ. While riding on a hand car with his men on April 12, 1919, the car, then being operated at a speed of three or four miles per hour on reaching a slight curve suddenly left the track. The plaintiff alleges that the defendant negligently furnished him with a hand car equipped with a gauge too wide to properly fit on the track; that the flange of the wheels rode upon the rails rather than the ball of the wheels and that the car left the track on the date mentioned by reason of the improper gauge; that plaintiff, at the time of the derailment, was thrown off the car and injured. Defendant denied negligence, and affirmatively pleaded assumption of risk and contributory negligence. The jury returned a verdict in favor of plaintiff for $10,000, the amount demanded on the complaint. From the judgment accordingly entered defendant prosecutes this appeal.

So far as they need to be stated at this time, the facts are: Plaintiff was a section foreman, and had supervision over and maintenance of eight miles of main line track of the Oregon Short Line Railroad between Downey and Arimo stations in

Idaho.  On the date of the accident plaintiff, with a crew of
seven men, left Virginia City, Idaho, where there is a tool
and section house, to do their usual work of repairing the
track.  Returning from work that afternoon the car was de-
railed, and plaintiff sustained injuries.  The car had been
furnished plaintiff about two weeks before.  It was an ordi-
nary car propelled by hand, and had just come from the
shops and was supposed to be in good repair and good order.
There was no obstruction on the track to cause the derail-
ment.  It was after the accident that the cause of the de-
railment was discovered by some of the section men who,
upon close inspection of the car, ascertained that the wheels
were riding upon the flange instead of the ball.  Returning
from the hospital about two weeks after the accident, plain-
tiff was informed of the defective condition of the wheels of
the car, and he then made an examination and discovered
that the car was riding on the flange, instead of the ball of
the wheels riding upon the rails.

When a car is received from the shops it is supposed to be
properly gauged, with the wheels securely set.  No tools are
furnished section men for changing the gauge of wheels.  To
fit the wheels properly it is necessary that it be done by ma-
chine men with lathes.  It, was not the practice of section
foremen anywhere to examine hand cars in order to ascertain
whether they had been properly gauged.  Plaintiff had been
a section man for 30 years, had worked for various roads,
and had never himself gauged the wheels of a hand car, nor
had he known of other section men doing it.

Appellant's first assignment of error is that the court erred
in permitting the plaintiff and one of his witnesses to testify
regarding the manner of gauging the wheels.  Plaintiff was
permitted to testify without objection that he could not gauge
wheels and had no tools for that purpose.  Thereafter similar
questions were propounded to plaintiff and another witness,
and to these questions objections were made by defendant.
One of the questions answered over defendant's objection
was whether section foremen or section men are ordinarily
furnished tools with which to turn or a lathe to turn the axle

or set the wheels back in case they are not properly gauged. It is argued that these questions and answers could not affect the duty owing to plaintiff by defendant, and that, if the hand car was defective, plaintiff could have sent it back, and it made no difference whether or not he could repair it. Conceding that this evidence was not material, it was of so little importance that it could not possibly constitute prejudicial or reversible error. When the question calling for the evidence was first asked plaintiff, counsel for defendant considered it of no importance and evidently for that reason, did not interpose an objection. It cannot now, because of unnecessary repetition, be magnified into reversible error.

It is also argued that the court erred in permitting plaintiff to testify relative to the nature and extent of his inspection of hand cars and the practice of foremen in inspecting them. The evidence was to the effect that these hand cars usually run hard for a month or so because of tightness of the bearings, and that it had always been customary to furnish hand cars properly gauged to the track, and that section men were never known to gauge a hand car or examine it as to gauge. All this testimony was introduced after the rules of defendant had been introduced and after plaintiff had been examined by defendant on cross-examination regarding them. These rules read:

"No. 732. Every person accepting employment does so with full knowledge of dangers incident to the operation of the railroad, and agrees to exercise due care in the performance of his duty to prevent accident to himself and others, and before using them, to see that any machinery or tools are all in a safe condition to perform the service required."

"No. 772. Hand cars must be examined at least once a week for loose bolts and other defects. The same must be kept in good order, bearings and machinery must be well greased, and not to do such involves risking an accident."

Defendant contends that, by virtue of these rules, it was plaintiff's duty to inspect the wheels of the car that had been furnished him, for the purpose of ascertaining whether the wheels were properly gauged. Under the rules plaintiff is required to inspect the car once each week for loose bolts and

other defects.  Plaintiff testified that he complied with the rule as he understood it.  The gauge of the wheels is a permanent condition, not something to be inspected at least once each week, and the foreman had a right to rely upon the presumption that the car was in good condition, that it had been properly finished, and was fit for use when it was delivered to him.  The rule did not require him to make a minute inspection of the car, and an inspection of the wheels for the purpose of passing judgment on whether it had been properly constructed, and was safe for the intended purpose.  If this construction of the rule is proper, the evidence which defendant calls immaterial supported the rule, and hence could not be prejudicial.  If, however, the rule is .ambiguous, and there is any uncertainty regarding what is meant by the sentence that foremen shall inspect the car once a week for loose bolts and other defects, the testimony objected to was clearly admissible as bearing upon the question as to whether the rule was intended to require an inspection and examination of all parts of the car when it was first received.

It is next contended by appellant that the evidence disclosed no actionable· negligence on the part of defendant.  It certainly was its duty to use ordinary care to furnish plaintiff a hand car that was reasonably safe.  Plaintiff's evidence, if believed by the jury, justified the finding of actionable negligence.

It is urgently insisted that the evidence tending to prove assumption of risk was so clear that the court should have granted defendant's motion for a nonsuit.  It is again argued that it was the duty of plaintiff to make an inspection of the car when he received it, and that he was chargeable with the knowledge that a performance of his duty would have disclosed, and that it was his duty to see that his hand car was safe and fit for use when he received it.  As we have heretofore said, the plaintiff had. a right to assume that the car had been properly constructed, and there was no duty devolving upon him, under the rules or otherwise, to make an inspection for latent and. unobservable defects.  It was not his· duty to

measure the wheels or make any other examinations save the one for loose bolts and other like defects that would occur during the operation of the car. If, however, the defect or imperfect gauge of the wheels was open and obvious, so that he should have known about it, it was a risk assumed by the plaintiff. But evidence furnished by plaintiff tended to prove that the improper gauging was not open and obvious and not readily observable. One of the section men testified that immediately after the accident he made an examination of the car for the purpose of ascertaining what caused the derailment. He said he got under the car and looked up under the wheels, and then, and not until then, could he see that "it was not fitted down on the ball like it should be on the rail." This witness further testified that he had been on the car every time that it was in use; that there was nothing about the wheels that indicated what was the matter with it; that it ran as all new cars do; that in order to notice the defective gauge one had to make a close inspection. Plaintiff testified that the car was the same as any new car, and seemed to be all right as far as a person could see; that he had made an examination for loose bolts and loose boxings; that he did not know what caused the derailment until after the accident; and that, having been informed of what caused the accident, he made an examination of the car, and the cut in the flange showed plainly. One of the defendant's witnesses testified that about four days after the accident he examined the car and found not quite a quarter of an inch difference in the wheels, and "found it was not dangerous." He said the car was like any other car, and that his measurements satisfied him that the car was all right.

Regardless of plaintiff's testimony, that produced by defendant made it a question for the jury whether the defect was so patent that plaintiff should have known of it. In *Gila Valley G. & R. Co.* v. *Hall*, 232 U. S. 94, 101, 34 Sup. Ct. 229, 231 (58 L. Ed. 521), the court said:

"And then, the question whether the defect was such as to render the use of the car dangerous was in dispute at the trial; hence, it could not be properly held that the risk was indisputably obvious, even to one who knew of the defect. It is quite clear,

therefore, that a verdict could not properly have been directed in favor of the defendant upon the ground that the plaintiff, in using the car, had assumed an obvious risk."

It is urged that the court erred in charging the jury. The instruction complained of, so far as material here, reads:

"A servant of mature age and understanding, in entering upon any employment in which he is experienced, assumes all risks and hazards inherent in or naturally incident to such employment, regardless of whether such risks are of an obvious, visible kind, or of a concealed or hidden character. *But, before a servant can be held to have assumed the risks incident to his employment, it must be shown by a preponderance of the evidence either that he, by reason of experience or from actual notice or knowledge, understood and appreciated such risks and the dangers thereof,* or that the same were so open and obvious that, in view of his age, intelligence, and experience, he should have appreciated the same."

The defendant specially excepted to the italicized part of the instruction.

The law is settled by the decisions of the Supreme Court of the United States that under the federal Employers' Act (U. S. Comp. St. §§ 8657-8665) the servant assumes the same risks that he assumed at common law. In the instruction complained of the district court states the law correctly in the first sentence of the instruction, but in the sentence following, and above quoted, there is not only an utter confusion of thought, but a palpable misstatement of the law as well. If a servant assumes the "risks and hazards inherent in or naturally incident to" the "employment, regardless of whether such risks are of an obvious or hidden kind, or of a concealed or hidden character," as charged by the court in the first sentence of the instruction, how can what follows in the second sentence of the instruction also correctly reflect the law? If the second sentence were limited to the risks that are usually denominated extraordinary or such as arise from the negligence of the employer, one might find some argument in support of the instruction. But even then the law is stated too favorably to the plaintiff in this, that "actual notice or knowledge" on his part is required. The law requires only what is equivalent to actual notice or knowledge—that is, facts and circumstances, from which no-

tice may be inferred. That is, in law one is presumed
to have had notice when by the exercise of ordinary        6.
care he would have known of the fact or occurrence in
question. Under such facts the law imposes notice upon the
theory that one knows what it was his duty to know—that
is, what he ought to have known if he had exercised the de-
gree of care the law imposes. The language of the instruc-
tion is therefore too favorable to the plaintiff.

Nor is it permissible to say that the language applied only
to extraordinary or unusual risks. The court says: "But
before a servant can be held to have assumed the risks *inci-
dent to his employment*," it must be shown, etc. (Italics
ours.) That part of the charge is limited strictly to the risks
that are incident to the employment. The law in re-
spect to the assumption of risks incident to the employ-        7
ment is clearly stated in 3 Labbat's Mast. & Serv. (2d
Ed.) § 1168, where, after stating that the servant assumes
the risks incidental to his employment, the author says:

"The doctrine stated in the preceding section may be regarded
as one which rests upon two presumptions: First, that, under
normal circumstances, a person who enters any given employment
appreciates all the risks which are normally incident to that em-
ployment; and, secondly, that the fact of his accepting the employ-
ment with this appreciation of the risks which it normally involves
warrants the inference that he agrees by implication to relieve the
master of all responsibility for such injuries as he may receive as
a result of their existence, the consideration for this implied agree-
ment being the stipulated compensation, which is supposed to be
sufficient to indemnify him for the ever present possibility that
one or the other of the risks thus undertaken may eventuate in
some disaster."

"In support of the first branch of the above statement some ex-
plicit language of the courts may be cited. * * * More fre-
quently, however, the doctrine involved is left as an indirect, but
none the less certain, deduction from the fact that, in passages
affirming or discussing the servant's acceptance of ordinary risks,
judges employ a phraseology which shows that an ordinary risk
is always viewed by them as being one which is comprehended by
the servant, and that a risk which is ordinary and at the same time
not appreciated by the servant involves a logical impossibility and
contradiction of terms."

This court is now firmly committed to the doctrine as it is

stated by Mr. Labatt. *Toone* v. *O'Neill Const. Co.*, 40 Utah, p. 284, 121 Pac. 10, and *Kuchenmeister* v. *Railroad*, 52 Utah, pp. 126, 127, 172 Pac. 725.

The question, therefore, is whether the error must necessarily result in a reversal of the judgment. Plaintiff not having assumed the risk as a matter of law, the instruction, although erroneous, was not controlling, and therefore not prejudicial or reversible error.

It is argued by appellant that plaintiff violated the rule requiring him to examine the hand car ''at least once a week for loose bolts and other defects''; that he was therefore guilty of contributory negligence as a matter of law, and that the jury should have been instructed to that effect. The generally accepted doctrine is that, if the evidence clearly shows that an injury complained of was caused by the employé's violation of a rule promulgated for the protection of the class of employés to which he belonged, the employé is guilty of contributory negligence as a matter of law. But this general rule is subject to exceptions, among which is that—

"When the master has habitually, either expressly or tacitly, sanctioned the violation of the rules, or has for any reason suspended them he cannot interpose such violation to defeat a recovery." *Boyle* v. *U. P. R. R.*, 25 Utah, 420, 71 Pac. 989; *Wright* v. *S. P. Co.*, 14 Utah, 393, 46 Pac. 374; *Konold* v. *R. G. W. R. R.*, 21 Utah, 381, 60 Pac. 1021, 81 Am. St. Rep. 693.

Another exception is that, when the rule is susceptible of two constructions, and the servant in good faith puts a certain meaning upon it, and is injured because of its violation by him, he is not guilty of contributory negligence as a matter of law. *Texas R. R.* v. *Leighty*, 88 Tex. 604, 32 S. W. 515. Evidence introduced by plaintiff was to the effect that section foremen had nothing to do with gauging the wheels of the car; that it was not customary to examine a hand car for its gauge; that plaintiff examined the car for loose boxings and loose bolts—the only kind of an examination he had made during all of his experience. Assuming that the rule is not ambiguous, there was evidence that it had never been enforced, and was

therefore waived. Whether plaintiff's omission to inspect the
car as to its gauge was a breach of the rule or a breach of
duty on his part, in the absence of any rule, is not free from
doubt, but, in the light of the testimony, it cannot be said
that under these circumstances the plaintiff's failure to in-
spect the wheels of the car was so clearly contributory negli-
gence that reasonable men must agree that the plaintiff was
guilty of negligence. On that issue the burden was upon
defendant, a burden that must be maintained by proof
clear and decisive before the court may find such neg-
ligence as a matter of law. It was the jury's right to
determine that issue. From the verdict of $10,000, the
amount demanded in the complaint, it is apparent that the
jury found that defendant had not sustained its claim of
contributory negligence.

It is insisted that the verdict is not the result of a delib-
erate consideration of the evidence by the jury, and that it
is based upon passion and prejudice. At the time he was
injured plaintiff was 50 years old, and was then earning $105
per month, and in addition was furnished with a house in
which to live, and was also furnished with fuel. He suffered
a fracture of the wrist, the joint being practically solid, the
muscles that extend the fingers being contracted. At the
time of the trial he could not close his hand, which was in-
clined to tip back. He was still suffering pain. The palm
of the hand felt paralyzed. He had not been able to use
the hand for manual labor, and three physicians testified
that the condition appeared permanent. The defendant's
examining physician testified that the condition of plaintiff's
wrist would not prevent his performing the duties of section
foreman, and that he would pass plaintiff as being qualified
and acceptable for that position.

The question now arises whether the verdict is so grossly
excessive that it shocks the ordinary man's sense of justice.
Is the verdict so excessive that it must necessarily be regarded
as the result of passion and prejudice? The trial court did
not think so. Conceding that the verdict is excessive, more
than some other jury might have found, more than we would

have allowed plaintiff had we been jurors, still such excessiveness in and of itself—and that is all that can be said· of the verdict—is not enough .to require a reversal of this judgment. As stated by Mr. Justice Frick in *Eleganti* v. *Standard Coal Co.,* 50 Utah, 585, 168 Pac. 266:

"The mere fact that the verdict of a jury may be excessive is not alone sufficient to show that it is the result of passion or prejudice"

—a principle firmly established in this jurisdiction. *Eleganti* v. *Coal Co.,* supra; *Stephens Ranch & L. S. Co.* v. *U. P. R. R.,* 48 Utah, 528, 161 Pac. 459; *Jensen* v. *D. & R. G. R. R.,* 44 Utah, 100,·138 Pac. 1185.

While we.do not regard the verdict as the result of passion and prejudice, we are convinced that it is excessive, and therefore unjust to the defendant. Great latitude is necessarily allowed to a jury in assessing damages for personal injuries. A plaintiff who is entitled to damages should be fully compensated. No verdict is right which fails to compensate; none is right which more than compensates. The trial judge should not in this case have granted a new trial, but, in the exercise of his discretion, he should have required plaintiff to remit part of the judgment, and, in the event of refusal, should have granted the motion for a new trial. Is this court powerless to do that which the district court should have done? Is this court wholly powerless when to all of its members it appears indubitably that the jurors erred in their judgment as to the amount of damages awarded? Referring to this court, Comp. Laws Utah 1917, § 6995, says:

"The court may reverse, affirm, or modify any order or judgment appealed from.   *   *   *"

Considering the evidence adduced by plaintiff alone, and in the light most favorable to him, we are convinced that the jury should not have awarded plaintiff damages in excess of the sum of $7,500. The plaintiff is therefore required to remit the sum of $2,500 from the judgment within 20 days after this opinion is filed and served on his counsel, and to file such remittitur damnum with the clerk of this court with-

in such time, or, in case he refuses to do so, a new trial will
be granted to defendant unconditionally, and in the latter
event plaintiff to be required to pay the costs on appeal. If,
however, the remittitur is made, then the order should be
that neither party recover such costs.


CORFMAN, C. J., and GIDEON, THURMAN, and
FRICK, JJ., concur.