## SHOEMAKER v. FLOOR.

No. 7150.   Decided April 17, 1950.   (217 P. 2d 382.)

Rehearing Denied August 2, 1950.

See 61 C. J. S., Motor Vehicles, sec. 520. Acceptance of other state's decisions when using its rules or statutes, see note, 73 A. L. R. 897. See, also, 14 Am. Jur. 302.

*Rich & Strong*, Salt Lake City, for appellant.

*Pugsley, Hayes & Rampton,* Salt Lake City, *S. D. Huffaker,* Salt Lake City, for respondent.

McDONOUGH, Justice.

Plaintiff below recovered a judgment for personal injuries sustained as a guest passenger in an automobile driven by defendant. The case involves the construction of the Idaho guest statute, Sec. 48-901 of 1940 Supp. to Idaho C. A. 1932, the accident having occurred in Idaho. The cited statute precludes a guest from recovering from the owner or operator of a vehicle, for personal injuries

"unless such accident shall have been intentional on the part of said owner or operator or caused by his * * * intoxication or his reckless disregard of the rights of others."

Plaintiff alleged:

"That the injuries to plaintiff as herein set out were caused by the negligent acts and omissions of defendant, in this, * * * that on the said 23rd day of December, 1946, defendant asked plaintiff to ride with him from Salt Lake City, Utah, to Pocatello, Idaho, and return; that at about 1:30 A. M., while returning as aforesaid and in the nighttime and while the said highway was covered with ice, the said defendant against the protests of plaintiff, drove the said car between 75 and 80 miles per hour and while he was in an intoxicated condition, and with reckless disregard for the safety of plaintiff, and that as a result thereof, the said car left the highway as aforesaid."

By answer defendant denied intoxication, recklessness, excessive speed, and blameworthiness. By affirmative defense he alleged that the accident was unavoidable on his part, and also that plaintiff assumed the risk of the journey. Jury trial was waived. The trial court found the issues in favor of plaintiff. We therefore summarize the plaintiff's testimony as to the circumstances leading up to the accident, and how it occurred.

Plaintiff testified that defendant had kept company with her for some time, and that he invited her to accompany him in his 1941 Cadillac coupe on December 22, 1946, from

Salt Lake City, Utah, to Pocatello, Idaho. They left Salt Lake City about 6:30 P. M. There was a drizzling rain, and it was misty and foggy. Plaintiff, however, felt perfectly safe on the trip to Pocatello. Defendant averaged about 50 miles per hour going to Pocatello. Plaintiff slept part of the time. They arrived in Pocatello about midnight, and they remained there about 1½ hours. During that period of time they were with a friend of defendant at the "Burger Barn." The proprietor served plaintiff and defendant each a cocktail which contained about 3 teaspoonfuls of whiskey. Defendant drank two additional cocktails containing the same quantity of liquor.

About 1:30 A. M., defendant suggested to plaintiff that it would be advisable for them to return because of the lateness of the hour. She noticed nothing about his conduct which suggested that he was under the influence of liquor. In fact, she thought he appeared normal. She did not feel uneasy about riding back to Salt Lake City. As she got into the car she noticed that it had stopped raining and had turned colder. As she "settled back for the return trip" she remarked that the roads might be icy as the weather had turned cold. However, she was not conscious of any danger. It took about 10 minutes to reach the Pocatello city limits. At that point defendant said "We are going to make a record run." He began to drive 50 to 55 miles per hour. He conversed with her and she noticed that his tongue seemed to become thick, and he seemed to "talk in riddles." She did not sense any danger until they reached a curve about 5 miles south of Pocatello. Defendant was driving about 55 miles per hour around a curve and the rear end of the car started sliding. Plaintiff said, "The roads are awfully slippery. Please go a little slower." She described the place where the car skidded around a curve, as being "about a mile above the straight road."

Instead of reducing his speed, defendant seemed to drive faster, her remark appearing to anger or annoy him. Be-

fore she realized what was happening, as the speed of the car increased, along a straight section of the highway, it started to slide on the road for a quite a distance. Plaintiff said, "Do something." Defendant said, "I can't control the car." She was not conscious of the highway being slippery until the car began to slide. The car proceeded gradually to the left, and about a mile beyond the curve it left the highway, at which time it was going about 65 miles per hour. She stated that she thought the car skidded for some time from the one side to the other until it left the highway. The car did not tip over, but ran into the barrow pit along the side of the road, over rocks and abruptly came to a stop. When the car struck the barrow pit plaintiff was thrown about in the car, and finally thrown to the floor, in the process of which her head struck the instrument panel. She suffered severe back injuries and cuts on her legs and forehead.

Defendant succeeded in stopping another car traveling on the highway. He carried plaintiff about 40 feet to this car, and while doing so did not appear to be intoxicated. When she was later interrogated by her physician as to how the accident happened, she reported that something went wrong with the steering mechanism.

A deputy sheriff, who testified for defendant as to the condition of the highway, related that the highway is cement, 20 feet wide, with gravel shoulders 3 feet wide on each side, and that it is about level and straight for about ¾ of a mile to the north of the point where the car left the highway. He observed that the car was stopped at a point 75 to 100 feet from the place where it left the pavement, and he noticed tire marks for a distance of 50 feet veeering gradually from the right side of the road to the left immediately preceding the point where the car left the highway. The officer's testimony was to the effect that he detected no odor of alcohol on the breath of defendant.

Defendant attacks the findings of fact, conclusions of law and judgment by several assignments of error. His principal contentions may be discussed under three separate headings: (1) That the evidence is insufficient to permit recovery under the Idaho guest statute. (2) That plaintiff assumed the risk of the journey. (3) That even if plaintiff had established a right of recovery, the court awarded excessive damages.

The Idaho guest statute as noted above, does not permit recovery for personal injuries by a gratuitous guest, except in the following situations: (a) The accident was intentional or the injuries wilfully inflicted. (b) The accident was caused by intoxication of defendant. (c) The accident was caused by the reckless disregard of the rights of others. Respondent concedes that the record would not support a finding (if one were made) of an intention on the part of defendant to cause the accident. The court made no finding to the effect that the accident was caused by intoxication of defendant.

The principal question, therefore, is whether or not the conduct of defendant as testified to by plaintiff, may be found by the trier of the facts, to constitute "reckless disregard" of the safety of plaintiff within the meaning of the Idaho guest statute. Cases from several jurisdictions having similarly worded statutes are cited by appellant and respondent in support of their respective positions. However, since the court is applying the statutory law of Idaho, we must give to such law the construction placed thereon by the Supreme Court of that state if such construction has been made. Appellant's contention that "reckless disregard of the rights of others" is equivalent to "wilful misconduct" used in the Utah "guest statute," sec. 57-11-7, U. C. A. 1943, in our opinion has been rejected by the Idaho court.

In the case of *Dawson v. Salt Lake Hardware Co.*, 64 Idaho 666, 136 P. 2d 733, at page 738, in a special concurring

opinion by Ailshie, Justice, which was concurred in by two other members of the court and hence became the opinion of the court on that particular phase of the case, the court criticizes an instruction of the trial court wherein the trial court stated in defining "reckless disregard of the rights of others":

" '* * * The phrase or term "reckless disregard" as used in the guest statute above quoted means an act destitute of heed or concern for consequences; especially foolishly heedless of danger, headlong, rash; *an act of such conscious indifference to consequences that the jury is justified in saying that the driver wilfully injured his guests. Reckless disregard, wilful disregard and wanton disregard are, gentlemen, equivalent and synonymous terms.' "*

The comment in the opinion of the Supreme Court is as follows:

"The italicized portion of the foregoing quotation from Instruction 15 appears to define the word 'reckless' as the equivalent of 'wilful,' 'conscious,' or 'wanton.' Of course the word 'reckless' conveys a different meaning when used in connection with some kinds of transactions as distinguished from others. The connection and circumstance under which it is used must give color and substance to its meaning. Where, however, the word is used with reference to the driver of a guest car, in relation to the guest himself in the car, it can hardly be said that 'reckless' includes *wilful, intentional, or done on purpose.* If so intended, there would have been no reason for retention of the word 'reckless'; nor would the legislature have deleted from the statute the words, 'gross negligence' by the 1939 amendment. (Sec. 48-901, I. C. A., as amended, '39 S. L. chap. 160, p. 286.) It is evident, to my mind, that the legislature by the use of the word 'reckless' following the word 'intentional' meant to hold the driver liable for a lesser degree of negligence than an 'intentional' act. A driver may accomplish the same result, however, by driving in a manner or at a speed that is dangerous (reckless), and yet do so with no special purpose to injure his guest or himself, or intent other than to be going wherever and however he pleases, regardless of results.

"The word 'reckless,' as used in this statute (sec. 48-901, I. C. A., as amended by chap. 160 of the '39 Sess. Laws), is, in my opinion, not used as synonymous with 'conscious indifference,' 'wilful disregard,' or 'wanton disregard' of the rights of a guest. * * *"

The construction was confirmed in the subsequent case of *Hughes* v. *Hudelson,* 67 Idaho 10, 169 P. 2d 712, 717, and application was there made to the facts of that case. The recitation of such facts sheds light on the application of the definition given in *Dawson* v. *Salt Lake Hardware Co.,* supra. In the *Hughes* case the plaintiff sued defendant under the guest statute here involved. Late in the evening defendant was driving from Gooding to Ketchum in Idaho in a Chevrolet truck. While on his way he stopped to pick up a pedestrian whom he permitted to ride in the rear of the truck. A few miles west of defendant's destination at a point where the highway curved, the pick-up truck met two on-coming cars, the lights of the second car not being dimmed. Momentarily blinded by the lights of the car, respondent drove the truck to his right to allow ample room for the cars to pass. In doing so, the right wheels of the truck went off the road and onto the shoulder of the highway which was soft and lower than the oiled portion. On turning the truck to the left to return the right wheels to the oiled portion of the highway, the truck went out of control, upset, and rolled over. The guest rider suffered death as a result of the truck over-turning. In addition to the above facts, there was evidence on the part of the investigating officers that the marks made by the two right wheels of the truck showed that the truck had gone some 360 feet on the soft shoulder of the road prior to turning back onto the oiled surface and there was no evidence during that period of time of any application of the brakes. There was also evidence of an admission on the part of defendant that he was driving at that time between 40 and 45 miles per hour.

An Exhibit C was introduced in evidence. What it consisted of is not clearly apparent from the opinion, but it evidently merely illustrated the testimony of those who testified relative to the marks on the highway and the position of the truck after it overturned. Under the recited facts, the trial court granted defendant's motion for a non-

suit. The Supreme Court on appeal found reversible error in such ruling, and after quoting the comment in the *Dawson* case hereinabove set out, stated:

> "* * * The admission of the respondent, that he was driving at a 45-mile speed, raises, the prima facie presumption of negligence (Sec. 48-504, subd. b, par. 8, I. C. A.; *Stallinger* v. *Johnson*, 65 Idaho 101, 139 P. 2d 460, 466; *Willi* v. *Schaefer Hitchcock Co.*, 53 Idaho 367, 373, 25 P. 2d 167); and that, coupled with the physical facts, as they are disclosed by the testimony of the sheriff, as to the wheel markings on the oiled pavement and shoulders, and other physical facts disclosed by Exhibit C, constitute sufficient proof to make a prima facie case to put the defendant on his proof. The admissions of defendant and the physical facts, as they are testified to, make a prima facie showing of 'reckless' driving, within the meaning of that term as defined in *Dawson* v. *Salt Lake Hardware Co.*, supra."

According to the plaintiff's testimony in the instant case, the roads were wet but not icy on the trip from Ogden to Pocatello. She testified that at the inception of the return journey she remarked that it had turned colder and that the roads might be slippery. The defendant himself testified that he observed that the weather had cleared prior to the beginning of the return journey. He drove at a speed of some 50 to 55 miles per hour according to plaintiff's testimony, continuing such speed around a curve, whether sharp or gradual the evidence does not disclose. However, the car skidded, according to her testimony, whereupon she cautioned that the roads were very slippery and asked defendant to please go a little slower.

Up to this point, under the Idaho guest statute, it is doubtful if reckless disregard of the plaintiff's safety could be found. She further testified, however, that upon her warning, the defendant seemed to get angry or become annoyed and he seemed to go faster and that the car was proceeding at a speed of about 65 miles per hour at the time it left the highway. This conduct, under the Idaho law as applied in *Hughes* v. *Hudelson*, supra, when considered in the light of the previous suggestion as to the icy condition of the road and defendant's

knowledge that it would probably be slippery, constitutes sufficient evidence from which the trier of the facts, if plaintiff's testimony were believed, would be justified in finding a reckless disregard for the safety of plaintiff. While in several jurisdictions with statutes similar in wording to that of Idaho, defendant might have been entitled to a nonsuit under the stated facts, the two cited cases from Idaho convinces us that the question of "reckless disregard for the safety" of plaintiff was for the trier of the fact.

Defendant, however, contends that in the light of other evidence the trial court was not justified in believing plaintiff's testimony as to her protest prior to the skidding which resulted in the accident. Plaintiff had given a statement to one of the attorneys for defendant some two weeks subsequest to the date of the accident. She was confronted with such statement, admitted signing it, and was cross-examined in connection therewith. Contained in such statement is the following:

"As we left Pocatello I had made the remark that the roads might be icy as it had turned cold, but I had more or less settled back for the ride to Salt Lake and was not conscious of any danger as we proceeded south and had not said anything to Floor about the manner in which the car was being operated."

On cross-examination, she responded to questions propounded to her as follows:

"Q. You said you had settled back for the ride, that is in there? A. Yes.

"Q. And wasn't conscious of any danger as we proceeded south— is that right? A. Yes, until we reached the curve.

"Q. And had not said anything to Floor about the manner in which the car was being operated—that is in there, isn't it? A. Yes.

"Q. And that is what you told me? A. Yes.

"Q. That is right, isn't it? A. Yes."

From the foregoing it is contended that plaintiff in her cross-examination admitted that she had not said anything

to Floor about the manner in which the car was being operated, but it is clear that the last two questions and answers did not amount to an admission upon her part that the answer made was correct but rather that it was in the statement she signed. This is so because the questions and answers following the ones quoted above were the following:

"Q. When did you first conclude that Floor had skidded on a curve to which you have testified now, and that you had made objection to the manner in which he was operating the car? A. About a mile above the straight road.

"Q. You just got through stating in this statement you assured me you hadn't made any protests about the manner in which he was operating the car? A. Other than the roads were slippery.

"Q. That you didn't make any protests about the manner in which the car was being operated—isn't that correct? You never told him to slow down, that he was going too fast? A. I did when we hit that curve, and slid on the road."

She also stated in her explanation of signing the statement that she was nervous and was not feeling well at the time the statement was made and that she had not examined it carefully.

Also pointed to by appellant as negativing the testimony of plaintiff relative to the car skidding on the curve is the statement purportedly made to the doctor or his nurse that the accident happened because something went wrong with the steering mechanism. It is the contention of appellant that if she was conscious of the fact that the car skidded on the curve above the place where it ran off the highway and warned the defendant of the slippery condition of the road, several days later she would not have reported failure of the steering mechanism as the cause of the accident. However, her explanation of her statement was that defendant had told her that the steering mechanism failed and that she did not furnish to the doctor or his nurse any details with respect to the accident since there was no occasion to do so. In this state of the record, the trial court

was not required to discount her testimony relative to the prior skid and her protest.

It must be remembered in this connection that the trial judge had the plaintiff before him in a situation where he was able to observe her demeanor, the manner in which the answers were given and also as to whether she was nervous or selfcontained or whether from the manner of answering she was evasive or straight-forward. We are not at liberty under those circumstances to interpret her testimony other than as it was interpreted below.

It is next contended that, under her own evidence, plaintiff assumed the risk attendant upon riding with defendant. This argument is based on her testimony to the following effect: That she had gone out with Floor on several previous occasions; on such occasions he nearly always had something to drink; that the only effect that the drinking had upon him which she noticed was that it caused him to drive faster; that she saw him take three drinks in Pocatello during the course of an hour and a half. However, plaintiff stated that she had no reason to anticipate that there might be any drinking on the trip when she left Salt Lake City for Pocatello. She explained that the reason for making the trip was to meet a sister of a friend of defendant in Ogden and to drive her to Pocatello. Furthermore, she testified that although she had seen him take three drinks she had seen him take three drinks containing the same amount of liquor on previous occasions without his appearing or acting other than normal. She also testified that when they entered the car for their return journey, he did not appear in any way to be under the influence of intoxicating liquor and that she felt perfectly safe in driving with him until she became conscious of danger when the car skidded.

It is further to be remembered that when she entered the car at Pocatello for the return trip she was from 150 to

200 miles from her home, and that not having observed anything which would cause her to believe that defendant would drive negligently or recklessly even due care would not require that she either stay overnight in Pocatello or seek some other means of returning to her home. The contention of appellant in this respect must therefore be overruled.

We now address ourselves to the final contention of appellant that the award of general damages in the sum of $9500 is excessive. The complaint of plaintiff prayed general damages in that sum. A prayer for such relief was predicated on the pain and suffering endured by plaintiff, alleged disfiguring scars, and permanent injury to plaintiff's back. The evidence revealed that plaintiff, as a result of the accident, suffered two fractured vertebra, cuts on her forehead, multiple cuts and abrasions on the body and legs, and hematoma—a swelling which contains blood—on her right foot.

In order to aid proper repair of the fractured vertebra, plaintiff was encased in three successive plaster casts, the first two of which extended from the shoulders to the hips and the third of which was not as extensive. These casts were worn for three months. One month after the removal of the third cast, she returned to her former employment and was engaged at such employment at the time of trial, some six months following the date of her injury.

She testified that following the accident she had extreme pain in her back and that her back pained considerably while the casts were worn; that after her return to her employment as telephone operator her back pained whenever she worked for more than a few hours and that if she worked a full eight hour shift—as she was sometimes required to do—she suffered greatly. She also stated that while she was never nervous previous to the accident, since that time she has been extremely nervous and irritable. Of the cuts on the forehead, the one above the hair line re-

quired eight stitches, and the other one (the size of which is not revealed) left a scar which was called to the attention of the trial court. There are two lumps on her back at the site of the fractures about one half inch in diameter. These are located at about the small of the back and could not be observed unless a very low back gown or other apparel which would expose that part of the back were worn. Plaintiff also testified to several small scars at or near the knees.

Plaintiff's physician, Dr. Clegg, testified that in the light of his recent examination of plaintiff and her progress to date of trial he anticipated a full and complete recovery with no permanent partial disability. Her nervousness and tiredness and the back pain, he stated were secondary results of her injured back, and that the immobilization of the spine causes a prolonged weakness which requires time to overcome. He expressed the opinion that a gradual building up of plaintiff's strength should cause the pain, nervousness and tiredness to disappear. He estimated that it would take several months.

Defendant contends that in the light of the evidence that no permanent disability of plaintiff was to be anticipated and that her prayer for general damages in the sum of $9500 was based on an allegation in her complaint that the injury to her back was permanent, the finding of general damages in the precise amount alleged should not be upheld. The court's finding to the effect that plaintiff would "eventually have a complete recovery," negatives all possible argument to the effect that the trial court misconceived the evidence as to permanency of plaintiff's injuries. It is argued that the finding to the effect that the cuts on plaintiff's head "left a disfiguring scar," is wholly unsupported by competent evidence in that there was no testimony that the scar would be permanent. The argument overlooks the fact that the trial judge saw the plaintiff and that the record reveals that he had her come to the bench to observe more closely the scar on her forehead. Defendant had ample opportunity to place in the record evidence which would

overcome or modify the impression which this visual evidence created, if in fact the scar would in time become less noticeable.

While the amount of the judgment is manifestly liberal, we cannot say that it is the result of bias or caprice. While the writer of this opinion believes that the amount of the judgment should be reduced in accordance with the rule laid down in *Shepard* v. *Payne,* 60 Utah 140, at page 152, 206 P. 1098, the majority of the court are of the opinion that the judgment is not unjust. Consequently, the judgment is affirmed. Costs to respondent.

PRATT, C. J., and WADE and WOLFE, JJ., concur.

LATIMER, Justice.

I dissent.

I agree that if this case is to be resolved on the construction of a statute that we are bound by the holdings of the Idaho Supreme Court. However, I do not believe the holdings of that court preclude us from determining whether the facts in this case show, as a matter of law, that defendant was not guilty of a reckless disregard of the rights of plaintiff. Such a determination is a question of fact not one of statutory construction.

Mr. Justice McDonough, in the majority opinion, refers to two Idaho cases, namely *Dawson* v. *Salt Lake Hardware Company,* 64 Idaho 666, 136 P. 2d 733, and *Hughes* v. *Hudelson* 67 Idaho 10, 169 P. 2d 712. The first cited case is of little help in solving the problems presented by this appeal as the question involved in that cause was whether two instructions given by the court were conflicting, erroneous and prejudicial. That decision deals principally with whether or not the words of the Idaho statute "reckless disregard of the rights of others" could be construed so as to mean an act of such conscious indifference to consequences that the jury would be justified in saying that the driver wilfully

injured his guests. The trial court so instructed the jury, and further submitted an instruction which stated that "reckless disregard," "wilful disregard" and "wanton disregard" were synonymous.

Whether the opinion of Chief Justice Holden or the specially concurring opinion of Mr. Justice Ailshie be considered as the authority, the rule which I deduce from that decision is that the Idaho legislature did not intend that "reckless disregard of the rights of others" would require a guest to show a wilful, wanton or intentional act on the part of the driver before he could recover; that to so hold would, in effect, require a showing that the defendant committed the act for the purpose of wilfully or intentionally injuring the guest. If that is readily ascertainable, the instruction as given went far beyond the wording of the statute. However, in spite of the instruction being erroneous the court held it was not prejudicial as the evidence was favorable to the driver of the guest car both as to negligence and recklessness.

In the *Hughes* v. *Hudelson* case there were also two opinions. Mr. Justice Ailshie wrote what I designate as the opinion of the court, and Mr. Justice Holden wrote a specially concurring opinion. In that case only four judges participated. Mr. Justice Miller concurred in both opinions, so that when both are pieced together I interpret the case to hold that in a case involving injuries to a guest the latter must establish his cause by a showing of more than ordinary negligence. And, further, while the guest need not show wilful or intentional acts on the part of the driver, the rule of preponderance of evidence to show ordinary negligence does not prevail. I quote the following passage taken from Mr. Justice Holden's concurring opinion because it appears to me to better reflect the opinion of that court on the particular point now involved.

"It will be noted the legislature expressly provides no guest 'shall have a cause for damages against such owner or operator' of a motor vehicle, 'for injuries, death or loss, in case of accident, *unless* such

accident shall have been (a) *intentional* [emphasis added] on the part of said owner or operator, or (b) caused by his * * * *intoxication* [emphasis in the statute], or (c) his *reckless disregard of the rights of others* [emphasis added].' In the case at bar, it is not either alleged or contended respondent was intoxicated at the time of the accident. Nor do appellants either allege or contend the accident in which Marvin G. Hughes lost his life was 'intentional' on the part of respondent. Here a recovery of damages is sought on the ground the accident was caused by respondent's 'reckless disregard of the rights' of Marvin G. Hughes.

"New Standard Dictionary (Funk & Wagnals, 1933) defines 'reckless': '(1) *Destitute of heed or concern for consequences; especially foolishly heedless of danger; headlong; rash; desperate.'*

"*This undoubtedly is the sense in which the legislature used the word, as well as the commonly understood meaning of the word.* Hence, by the use of the phrase, 'reckless disregard of the rights of others,' the legislature evidently meant, for instance an act 'destitute of heed or concern for consequences.' *What conduct and circumstances constitute 'reckless disregard of the rights of others,' is, of course, a question of fact. It in no way involves an interpretation of the statute.* The intent of a driver involved in an accident must be determined by his conduct and all the surrounding facts and circumstances. These might, or might not, show a purpose or intent to injure his guest, or the conduct of the driver and the surrounding facts and circumstances might show a 'reckless disregard of the rights of others.' " (Emphasis in last two paragraphs added.)

I accept the statement of facts as set forth in Mr. Justice McDonough's opinion, but desire to emphasize some of the details which I believe show only ordinary negligence on the part of the defendant. The details recited are, for the most part, those given by the plaintiff as she and the defendant were alone in the car and they are considerably more favorable to her than are those given by her in a written statement a few days after the accident. There is no showing of intoxication in this case, and while there is some reference to three highballs, a finding of driving while under the influence of liquor could not be sustained, and the facts fall way short of establishing intentional misconduct. The plaintiff accepted a ride to go to Pocatello, Idaho, knowing that the distance was great; that the hour of de-

parture for home would be late; and that reasonably fast driving would be required. It rained part of the time on the going journey, but plaintiff could not tell whether steadily or intermitently as she slept part of the time. She felt perfectly safe on her going trip and had no hesistancy in returning with defendant. At about 1:30 A.M. the defendant suggested they leave for home and plaintiff at that time was unconcerned both about his driving and his condition. While it had turned clear and the weather had turned cold, there is no showing the defendant knew that the road would be icy at any particular place or at all. There is a statement which plaintiff claims she made to the effect that the roads might be icy because the weather had turned cold, but up to time of the skidding apparently neither plaintiff nor defendant knew of the presence of ice on the surface of the highway. Defendant had averaged about 50 miles per hour on the going journey to Pocatello and was apparently driving at substantially the same speed on the return. Plaintiff claims that about five miles south of Pocatello in taking a turn the rear end of the car started sliding and that she requested the defendant to go a little slower. As indicated in Mr. Justice McDonough's opinion there is no showing as to the degree of the curve, and as I read the evidence, no showing of the extent or seriousness of the skidding and no suggestion of recklessness up to this point. There is plaintiff's statement that she at that time said to defendant, "The roads are awfully slippery. Please go a little slower." According to plaintiff, defendant's reaction to this statement was to drive faster, but this should be considered in the light of the fact that there were no strained relations between the parties, there had been no quarrel or misunderstanding, the defendant had just negotiated a curve, was driving on a road which was straight for at least a mile and a half, and the natural tendency of any driver is to increase the speed of a car on a straight-of-way. Plaintiff was not conscious of the highway being slippery at the place where the accident happened nor was the defendant until it was brought to their attention by the fact that the

car was heading off the highway. Plaintiff, at that time, requested that defendant do something, at which time he replied he was unable to control the car. The car gradually headed off the highway, ran along the shoulder and down into the barrow-pit. The distances of travel on the hard-surfaced part of the road, on the shoulder, and in the barrow-pit, together with the path followed by the car as testified to by the deputy sheriff hardly give a picture of heedless or reckless driving. The tire marks were regular for a distance of fifty feet on the traveled portion of the highway, indicating there was no swerving, turning or rolling, and the car was stopped from 75 to 100 feet from the place where it left the pavement without turning over, not such a great distance to travel when consideration is given to wet and slippery surfaces. The physical evidence seems to me to indicate the fact that the defendant had reasonably good control of his car; that he used good judgment in bringing the car to a reasonably early stop; and that reckless conduct prior to reaching the icy place was not present. It may be true that defendant was driving too fast under existing circumstances, but I hardly see such conduct as to be impressed with the belief that reasonable minds might find that defendant had wilfully disregarded the rights of plaintiff.

Using the words from the opinion of Mr. Justice Holden, in *Hughes* v. *Hudelson,* supra,

"What conduct and circumstances constitute 'reckless disregard of the rights of others,' is, of course, a question of fact. It in no way involves an interpretation of the statute. The intent of a driver involved in an accident must be determined by his conduct and all the surrounding facts and circumstances."

When that court was considering the facts in that case all the justices agreed that Hudelson's driving could be found by a jury to be in reckless disregard of the rights of a passenger. There was involved in that action the following conduct: Driving at an excessive rate of speed, while lights were blinding the driver's vision; running off on the

shoulder of the road; driving some 360 feet on the shoulder of the road; pulling back on to the oiled portion of the road in such a manner that the truck went out of control, upset, and rolled over several times; and all this without any apparent attempt on the part of the driver to slow up or decrease the speed of the car. Cast in that factual background, the court there held there was a question for the jury as to whether those acts on the part of the driver were in reckless disregard of the rights of a guest. I can visualize reckless conduct under those circumstances.

The facts in this case are not, in my opinion, so aggravated as those of the *Hudelson* suit. In the present instance I cannot find evidence in the record which would permit a finding of a reckless disregard of plaintiff's rights unless mere negligent driving of a vehicle can be so construed. There was nothing wilful, intentional, and reckless about defendant's driving in the sense that he was not appreciative of the reasonable care due his guest. Both parties were interested in getting home with dispatch. He had a reasonable excuse for haste. There was no other traffic on the highway, the road was straight, there were no road warning signs which were unheeded, and the only factors present which could possibly sustain a finding of recklessness was the estimated speed and the slippery condition of the road. However, insofar as the evidence is concerned, there was no showing that the defendant knew the road was covered with ice. The most that can be said is that he should have anticipated a slippery surfaced highway. While concededly it is difficult to determine when conduct changes from negligence to recklessness, I am convinced that in those states which have passed guest statutes the legislatures intended to get away from holding a driver liable to his guest unless there was clearly a marked disregard of a passenger's safety. Furthermore, I am convinced that the legislature of the State of Idaho when it passed the guest statute, as did our legislature, intended to require an aggravated form of negligence to permit a guest to recover.

Whether defendant's conduct was such as to establish the required aggravated form of negligence is a question of fact to be decided, in the first instance, in the trial court. If there is evidence to sustain such a finding, then we are required to affirm. My reading of the record forces me to the conclusion that all reasonable minds would conclude that defendant's acts might have been negligent but certainly not wilful or in reckless disregard of the rights of plaintiff. Such being the case, I would reverse.