## FALKENBERG et al. v. NEFF et al.

No. 4586.  Decided June 6, 1928.  Rehearing Denied August 28, 1928.  (269 P. 1008.)

260

*Stewart, Alexander & Budge,* of Salt Lake City, for appellants.

*William B. Higgins,* of Fillmore, for respondents.

CHERRY, J. In an action for the wrongful, willful, and malicious destruction of a dam and diverting works constructed by them across Red Cedar creek, in Juab county, the respondents obtained a verdict and judgment against appellants for $362.50 actual damages and $5,000 punitive damages, from which appellants have appealed.

The respondents and the principal appellant, the Granite Creek Irrigation Company, are rival claimants to the use

of the waters of Red Cedar Creek; both having uncompleted applications for appropriations for irrigation purposes of definite quantities of water therein pending before the state engineer. The application under which appellants claim is for 30 cubic feet of water per second, and was made January 4, 1918. The respondents' application is for 20 cubic feet of water per second, and was made October 7, 1921. Both applications were approved by the state engineer. Neither, when the matters in controversy arose, had been perfected, but the parties were engaged in constructing their respective works for the completion of their appropriations. As indicated by the respective dates of filing, appellants' application was prior in time and in right to the application of respondents. At the times in question, appellants had constructed no diverting works in the stream, and had no ability to make and had made no diversion or use of any of the water flowing therein. In the summer of 1922, respondents constructed a diverting dam across the channel of the creek at a point above the appellants' proposed point of diversion and thereafter diverted a quantity of the water from the stream through a flume, and were using it to aid in the construction of a ditch, when, about December 4. 1922, appellants destroyed the dam and diverting works.

On the part of respondents, it was claimed that the destruction of the dam and diverting works was willful and malicious and accompanied with unnecessary damage, and both actual and exemplary damages were prayed for.

Appellants admitted the removal of the dam, and justified the same up on the grounds that it was an obstruction in the stream which impaired and interfered with their prior rights to the use of the waters of the stream, and sought by counterclaim to recover $50, the reasonable cost of removing it. They made no claim for any use of the waters at that time, except to later assert that it was necessary to keep water flowing in the stream below the respondents' dam to their proposed point of diversion in order to keep the bed of the stream saturated against the time in the ensuing sea-

son when they proposed to complete their works and divert and use the waters of the stream for irrigation.

The case went to the jury upon the question of appellants' liability for actual and punitive damages for the destruction of the dam and diverting works, and resulted in a verdict as above stated.

Appellants have assigned numerous errors alleged to have occurred during the trial. Those deserving consideration relate to the instructions to the jury and the exemplary damages awarded.

The main contention of the appellants is that, as their proposed appropriation for 30 cubic feet per second of water for irrigation purposes was prior in time to respondents, they had the right, as against respondents, to have an uninterrupted flow of that quantity of water in the stream to their proposed point of diversion at all times, and that, respondents' dam and diverting works being an interference with that right, appellants were justified in removing and destroying the dam. The refusal and failure of the court to charge the jury accordingly is made the basis of numerous exceptions to the instructions given and requested instructions refused. It is unnecessary to repeat here the text of the court's instructions or of the requests for instructions offered by appellants. The court charged the jury in effect that appellants' application for the appropriation of 30 cubic feet per second of water was prior to respondents' claim; that respondents were bound in making their diversion above to so construct their diverting dam as to permit the quantity of water to which the prior claimant was entitled to be measured at and to pass by the dam in a practical and reasonable manner; that, if the dam constituted an obstruction and interference with the diversion and use of the water by the prior claimants, the latter would have the right to remove so much of it as was necessary to the exercise of their rights, and could recover the reasonable costs and expense of so doing from respondents; that if the dam was not an obstruction and did not interfere with appellants'

rights to the use of the waters in question, appellants had no right to injure or destroy the same; that, regardless of the rights of the parties by virtue of their proposed appropriations, when no diversion or use was being made of the water by the owners of the prior right thereto, they could not prevent another from using it; and that, if the jury found that the respondents' dam and diversion of the water in no way lessened the supply of the water which appellants could and would then use, appellants had no right to interfere with or remove the respondents' dam. The appellants submitted several requests for instructions, to the general effect that, under their pending appropriation, they were entitled to a flow of 30 cubic feet per second of water in the stream at all times, which the respondents had no right to obstruct or interfere with. The court refused these requests. Appellants complain that the trial court failed to define the rights of appellants in the water of the stream, but left the jury to speculate and conjecture what they were.

The instructions requested by appellants as to their rights to the water in the stream were plainly erroneous. At the time in question, they were not using, and could not use, the water for irrigation purposes.

"At such times as a prior appropriator is not using the water under his appropriation for a beneficial purpose, such waters are considered and treated, under the doctrine of appropriations, as unappropriated public waters, and for such periods of time are subject to appropriation and use by others." 2 Kinney on Irrigation, 1370.

By virtue of appellants' prior application for appropriation, they had the superior right to use 30 cubic feet of water per second for irrigation purposes as against respondents, but their right was to the use only, and did not extend to the dominion or control of the water when no beneficial use was being made of it. When appellants were not able to use and were not using the water, they had no legal claim to it, and its use by another

was no infringement of their rights. At the time when the respondents' dam was destroyed, the appellants had no claim or right whatever to the water being diverted or used by respondents, unless it was for the purpose of saturating the bed of the stream as now claimed. This claim was not made in the pleadings, nor was any request made to charge the jury concerning it. Although there was some evidence upon the subject, it seems not to have been a matter of importance at the trial. It is doubtful if the evidence in support of this claim as a beneficial use was sufficient to be submitted to the jury, but, since the claim of appellants in this regard was not pleaded and no request was made to instruct the jury concerning it, no error on that account is now available to appellants.

The court's charge to the jury concerning the relative rights of the parties to the use of the water of the stream at the time in controversy, and the relation of the respondents' dam thereto, is not open to any objection or exception made by the appellants. The conditions upon which the appellants' destruction of the dam could be justified were stated as favorably to appellants as they were entitled to demand, and they have no ground for complaint on this account.

It is next contended that the trial court erred in submitting the question of exemplary damages to the jury, and further erred by giving a mere abstract definition of exemplary damages, without pointing out the facts necessary to be found to support an award for such damages. This alleged error is based upon a general exception to instruction No. 15, as follows:

"Exemplary damages, also known in law as punitive damages, means damages given by way of punishment for the commission of a wrong willfully, maliciously, or wantonly, or with some element of aggravation, showing a vindictive, reckless disregard for the rights of others. They are not the measure of actual damages sustained, but they are given as smart money in the way of pecuniary punishment, to make an example for the public good, and to teach other

persons not to offend in like manner. Such punitive damages are not given as a matter of right, but as punishment, and are awarded with great caution. In case you award them in this case, you will include it as a separate item in your verdict."

The complaint sufficiently pleaded grounds for exemplary damages. The contrary is not claimed. It is contended that the evidence was insufficient to justify the submission of the question to the jury. There was evidence that the respondents, pursuant to their proposed appropriation, at considerable cost and labor constructed the dam and diverting works in a rough, rocky, and narrow canyon, difficult of access; that the principal structure consisted of long pine logs, brought from a distance, and laid across the channel, with ends fastened in notches blasted in rock; that wings constructed mainly of lumber or timber extended at higher elevations at both sides of the creek; that on the north side a box flume about 18 inches square and 12 feet long led from the wing through which respondents were diverting the water they were then using; that the top of the dam was a smooth level log, over which the waters of the creek could flow and be measured if the opening in the flume was obstructed or closed; that the appellants went to the diverting works early in the month of December, and, in the absence of respondents, one of whom resided near by, utterly destroyed the dam and works, cut the logs and timbers up, and threw them into the creek below, and then went to the home of one of the respondents and warned him not to rebuild it. As before seen, appellants at that time had no means of diverting or using the waters of the stream, and had no claim or right to it except to saturate the bed of the creek below, which, under the evidence, the jury might well have found to be a mere pretext. Added to this, is the plain fact that all of the water of the stream could easily and readily have been turned down the stream by the simple expedient of closing the mouth of the flume leading to respondents' ditch. That the destruction of the diverting works, in the manner and under the circumstances as shown

by respondents' evidence, is a sufficient legal basis for awarding exemplary damages is a proposition too plain for argument. If the jury believed the respondents' evidence, it was proper to assess punitive damages.

The contention that the instruction was erroneous because it was a mere abstract definition and did not point out the necessary particular facts to be proved cannot be sustained. The charge must be considered as a whole, and, when so construed, this objection fails. The court in its charge set out the claims of the respondents as pleaded in their complaint, which included the claim that the appellants had maliciously, wantonly, contumaciously, and unlawfully destroyed the dam, etc., and had threatened and warned respondents not to rebuild it, and that both actual and punitive damages were claimed. As separate issues, the court submitted to the jury whether, if appellants were justfied in removing an obstruction interfering with their rights, they did so without unnecessary damage to the dam and diverting works, and whether or not the acts of appellants were wanton and malicious or whether they were acting in good faith. The court instructed concerning the measure of actual damages, and then gave the instruction defining exemplary damages above quoted. In view of all that was said upon the subject, we think the application of the law to the facts in the case was simple and obvious. In this respect there is no similarity between the present case and the situation in *Smith* v. *Cannady*, 45 Utah 521, 147 P. 210, cited and relied on by appellants.

The verdict and judgment appealed from was rendered jointly against the Granite Creek Irrigation Company, a corporation, and six individual natural persons as defendants. It is contended by appellants that the award of exemplary damages was erroneous, and the verdict and judgment are against law, for the reason that all of the judgment defendants did not act upon motives condemned by law and punished by exemplary dam-

ages, that some of them were mere employees whose liability did not extend beyond compensatory damages, and that the plaintiffs, by making them all defendants, waived their right to exemplary damages, since some of them are not subject thereto. Appellants cite and rely upon 2 Sutherland on Damages, § 407, wherein the rule is laid down that, if a wrong is done by two or more persons and all are sued together exemplary damages may not be recovered unless all are liable therefor, and that, if some are liable for compensatory damages only, and others for both compensatory and exemplary damages, a suit against all is a waiver of exemplary damages if some are not subject thereto. While there are qualifications to this rule, as pointed out by the author in the same and following sections, it is not necessary to pursue the subject, because the facts in this case do not bring it within the principle of law referred to. Here the defendants sued acted together personally, and each participated in the wrongful act under circumstances, according to the respondents' evidence, when they must have known their act was wrongful, wanton, and unnecessary. The further fact in the case may here be stated that the respondents and the Granite Creek Irrigation Company were both contesting and seeking to defeat each other's proposed appropriation of the waters of the stream. The act complained of was of such a nature that one participating in it could not be heard to say that it was innocent. Even assuming that appellants were entitled to all the water flowing in the stream at that time, they were not justified in destroying respondents' works in the manner complained of if the jury believed the evidence that such was wholly unnecessary to the preservation of appellants' rights to the water. There was no claim whatever made at the trial that any defendant sued acted without knowledge of the situation. On the contrary, numerous circumstances showed that they were cognizant of the whole controversy, and committed the act after consultation and deliberation. The answer of the defendants sued was joint, and their justification a common

one. While one of the defendants and appellants, Samuel Neff, testified that several of the other defendants were employees of the Neff Bros. Land & Livestock Company, and that he assumed responsibility for taking them up to the dam, there was no other evidence on behalf of any defendant sued that he had acted innocently in the performance of an apparently lawful act at the direction of his employer. We see no valid grounds for any distinction in the degree of liability of the several applicants, and the exceptions on this ground must be denied.

The appellants challenge the amount of exemplary damages awarded by the verdict as excessive. As before seen, the actual damages were by the verdict assessed in the sum of $362.50 and the punitive damages in the sum of $5,000. After the rendition of the verdict, appellants moved for a new trial upon the ground, among others, of "excessive damages appearing to have been given under the influence of passion and prejudice." The motion was denied. Error on this account is now urged. Respondents say the question of excessive damages may not be reviewed in this court, and cite *Jensen* v. *D. & R. G. R. Co.*, 44 Utah 100, 138 P. 1185. In that case this court refused to disturb a verdict for actual damages claimed to be excessive upon the grounds that there was evidence to support it and that the amount of damages as a question of fact was wholly within the province of the trial court. The decision clearly pointed out, however, that a verdict may be so excessive or unjust as to present a question of law, in which case this court has undoubted power to correct it. In a later case (*Shepard* v. *Payne*, 60 Utah, 140, 206 P. 1098), it was held, in an action for damages for personal injuries, that a verdict of $10,000 was excessive and unjust; that the trial court, upon a motion for a new trial, in the exercise of his discretion, should have required the plaintiff to remit a part of the judgment or submit to a new trial. Not having done so, the Supreme Court on defendant's appeal, under authority of Comp. Laws Utah 1917,

§ 6995, required the plaintiff to remit $2,500 from the judgment, and ordered that, if he refused, a new trial be granted to defendant unconditionally. It may be stated that, so far as the excessive verdict involves questions of fact, the appellate court will not inquire further than to ascertain if there is evidence to support it, but, when it is so flagrantly excessive and unjust as to indicate a disregard of the rules of law by which damages are regulated, it is then subject to review and correction as a matter of law. Exemplary damages are awarded as a punishment. There is no definite basis upon which the amount can be computed, but there must necessarily be a limit to the amount which may be awarded. It is the general rule that the award should not be disproportionate to the actual damage sustained, or should bear some relation to the injury complained of and the cause thereof. 17 C. J. 995. See, also 1 Sedgwick on Damages, § 388. In *Rider v. York H. W. & P. Co.*, 251 Pa. 18, 95 A. 803, where $1,000 compensatory damages were awarded for injuries to land from diversion of water an award of $2,700 punitive damages was held to be excessive as disproportionate. In *Plotnik* v. *Rosenberg*, 55 Cal. App. 408, 203 P. 438, where the actual damages claimed was $15.60, a judgment awarding $1,500 as compensatory and exemplary damages, it was held that the exemplary damages allowed was out of all proportion to the actual damages and the judgment was ordered reduced on appeal to $300. In *Pendleton* v. *Norfolk & W. R. Co.*, 82 W. Va. 270, 95 S. E. 941, 16 A. L. R. 761, the verdict in an action for damages for assault and battery was for $557.50 actual and $5,000 punitive damages. On appeal, the verdict was held excessive and disproportionate to the actual damages and the judgment was reversed. In the case at bar, we are forced to the conclusion that the punitive damages allowed are so excessive and disproportionate to the actual damages sustained that as a matter of law the verdict and judgment cannot be upheld. The evidence most favorable to the verdict, in view of the law regulating the amount of such

damages, does not sustain or support the amount awarded. But this does not necessarily result in a reversal of the judgment and a new trial. An award of punitive damages in a reasonable and proportionate amount is justified by the evidence of respondents, which was evidently believed by the jury. Following the procedure of *Shepard* v. *Payne*, supra, it is ordered that the judgment appealed from be reversed and a new trial granted, with costs to appellants, unless respondents shall, within 20 days from the date of the filing of this opinion, file in this court a remittitur of all punitive damages in excess of $1,500; if such remittitur be filed, the judgment then to be modified in accordance therewith, and, as so modified, affirmed, with no award of costs on appeal to either party. It is so ordered.

THURMAN, C. J., and STRAUP, HANSEN, and GIDEON, JJ., concur.