## DUFFY v. UNION PAC. R. CO.

No. 7294. Decided May 17, 1950. (218 P.2d, 1080)
Rehearing denied August 2, 1950.

See 5 C. J. S., Appeal and Error, Sec. 1626.

*B. P. Leverich, M. J. Bronson, A. U. Miner, Howard F. Coray,* Salt Lake City, for appellant.

*Rawlings, Wallace & Black,* Salt Lake City, for respondent.

LATIMER, Justice.

This action was commenced by plaintiff below, Charles Thomas Duffy, under the Federal Employers' Liability Act, 45 U. S. C. A. § 51 et seq., to recover damages for personal injuries sustained by him while employed by the defendant as a railroad switchman. The accident happened on January 29, 1947, in defendant's yards at Milford, Utah. The jury returned a verdict awarding the plaintiff $12,500.00 for personal injuries and deducted the sum of $3,500.00 for plaintiff's contributory negligence, making a net verdict of $9,000.00 to plaintiff.

Neither the defendant nor the plaintiff has raised any question as to the sufficiency of the evidence to establish negligence or contributory negligence so the evidence concerning the happening of the accident will be detailed generally.

The plaintiff had been employed by the defendant railroad for approximately 28 years prior to the date of the accident. He was 63 years of age and approximately three months before the accident in question he had been operated on for the removal of his gall bladder. On the day in question he was working as a rear end brakeman on a train operating between Caliente, Nevada, and Salt Lake City, Utah. The train was proceeding east through the Milford yards and plaintiff's duties required that he realign certain switches after the train had completed switching operations between the tracks in the yard. The switches operated by him are referred to as the "hub" type and are distinguished from the "stand" type switches and are operated by use of a lever between two and three feet long. The lever rests horizontal with the ground and the manner of operation is to lift the free end upward to a vertical position and then push it downward on the opposite side of the arc. When the lever is again parallel

with the ground it is fastened into position by a locking device.

The switch causing the injury had become especially hard to operate because of the presence of water, which over a period of time had collected around the base of the switch. Eeither because of an accumulation of rust or freezing on the day of the injury Duffy had considerable difficulty in changing the position of the switch and as he exerted an unusual push to return the handle of the switch to a parallel position, he caused the injury of which he complains.

At the time of the injury, Duffy claims he felt a sharp pain in his side. He described the feeling as

"it felt as though water was running out in the vicinity of his previous operation."

The pain and burning sensation caused by the rupture lasted 7 or 8 minutes and then subsided, but the area continued to cause pain and discomfort. Duffy completed his day's work and on the following day visited a doctor in Salt Lake City, Utah. At that time, the doctor diagnosed his condition as an incisional hernia at the site of the gall bladder operation incision. The operation was not then performed. Instead the doctor prescribed a belt which plaintiff wore until he discontinued working on February 28, 1947. Plaintiff entered the hospital on March 3, 1947, was operated on and was hospitalized for a period of 13 days. Due to the fact the previous operation had broken open, the doctor concluded that it would be necessary to overlap the fascia so as to diminish the possibility of a recurrence and to accomplish this it was necessary to pull the fascia more tightly than is normal. This type of repair work resulted in some additional pain and discomfort. Plaintiff was released to return to work on June 16, 1947, and at the time of the trial was still employed by the defendant. The doctor made his last examination of plaintiff

on December 15, 1947, which was approximately 9 months after the operation and at that time plaintiff's abdomen was completely healed and no complaints as to pain or suffering were made by the plaintiff to the doctor. Complications were not encountered and plaintiff had a normal recovery.

A number of assignments of error have been urged by the defendant, but we deem it necessary to consider only one, that is, did the trial court abuse its discretion in not granting a new trial because the amount awarded by the jury ($12,500) is so grossly excessive and exorbitant that it appears to have been arrived at because of passion and prejudice? In view of the fact that a majority of the members of this court have concluded that this assignment is well taken, other assigned errors become immaterial.

Because of the size of verdicts being presently rendered this court has been faced on numerous occasions with discussing the principles involved in this assignment of error. Some concepts were announced in the case of *Bennett* v. *Denver & Rio Grande W. R. Co.* 117 Utah 57; 213 P. 2d 325, but a majority of the court did not concur in the suggested disposition of that case. The line of departure, however, was not on the principles enunciated but because the majority members of this court believed the verdict in that case did not meet the tests necessary to make the principles applicable. In this instance the facts are such that the principles do apply and, we therefore repeat some of the reasoning used and authorities cited in that case.

Section 104—40—2 (5), U. C. A. 1943, provides that a verdict of a jury may be vacated and a new trial granted by the trial judge when damages are excessive and appear to have been given under the influence of passion and prejudice. Trial courts of this and other states grafted on to that provision the right of the trial court to refuse to grant a new trial when the damages were

excessive, if the winning party would consent to a reduc-
tion. The provision was thus extended by judicial decision
to permit trial courts to require a remission of part of the
damages or suffer the consequences of a new trial. This
court placed its stamp of approval upon that procedure,
and, has on many occasions indicated that our rights of
review are limited to a determination of whether the trial
judge abused his discretion in not granting a new trial
unless the plaintiff consented to a reduction in the amount
of the verdict.

In the case of *Jensen* v. *Denver & Rio Grande
Railroad Co.*, 44 Utah 100, 138 P. 1185, 1192, Mr.
Justice STRAUP, speaking for the court, stated the
rule to be as follows:

"* * * A court, vacating a verdict and granting a new trial by merely
setting up his opinion or judgment against that of the jury, but usurps
judicial power and prostitutes the constitutional trial by jury. Still the
jury cannot be permitted to go unbridled and unchecked. Hence the Code
that a new trial on motion of the aggrieved party may be granted by the
court below on the ground of 'excessive damages appearing to have been
given under the influence of passion or prejudice.' Whenever that is made
to appear, the court, when its action is properly invoked, should require
a remission or set the verdict aside and grant a new trial. But, before
the court is justified to do that, it should clearly be made to appear that
the jury totally mistook or disregarded the rules of law by which the
damages were to be regulated, or wholly misconceived or disregarded all
the evidence, and by so doing committed gross and palpable error by ren-
dering a verdict so enormous or outrageous or unjust as to be attributable
to neither the charge nor the evidence, but only to passion or prejudice.
Whether a new trial should or should not be granted on this ground, of
necessity, must largely rest within the sound discretion of the trial court.
"Still that court, in such particular, is not supreme or beyond reach. Its
action may nevertheless be inquired into and reviewed on an alleged abuse
of discretion, or a capricious or arbitrary exercise of power in such respect.
Such a review is not a review of a question of fact, but of law. A ruling
granting or refusing a motion for a new trial is certainly reviewable when
the proceedings with respect to it are properly preserved and presented.
That has not been questioned. Of course, the ruling will not be disturbed on
evidence in conflict, or on matter involving discretion. Yet our power to
correct a plain abuse of discretion or undo a mere capricious or arbitrary
exercise of power cannot be doubted."

While there have been certain stray thoughts expressed

in other cases decided by this court, the rule as stated in the *Jensen* v. *Railroad Company* case, supra, has been generally followed by subsequent cases.
In *Pauly* v. *McCarthy*, 109 Utah 431, 184 P. 2d 123, 126, Mr. Justice WOLFE stated the rule to be as follows:

> "Where we can say, as a matter of law, that the verdict was so excessive as to appear to have been given under the influence of passion or prejudice, and the trial court abused its discretion or acted arbitrarily or capriciously in denying a motion for new trial, we may order the verdict set aside and a new trial granted. *Jensen* v. *D. & R. G. R. Co.*, supra (44 Utah 100, 138 P. 1185. 1192); and other cases cited above following that decision. But mere excessiveness of a verdict, without more, does not *necessarily* show that the verdict was arrived at by passion or prejudice. *Stephens Ranch & Livestock Co.* v. *U. P. Ry. Co.*, supra (48 Utah 528, 161 P. 459). It is true that the verdict might be so grossly excessive and disproportionate to the injury that we could say from that fact alone that as a matter of law the verdict must have been arrived at by passion or prejudice. But the facts must be such that the excess can be determined as a matter of law, or the verdict must be so excessive as to be shocking to one's conscience and to clearly indicate passion, prejudice, or corruption on the part of the jury. *McAfee* v. *Ogden Union Ry. & Depot Co.*, supra (62 Utah 115, 218 P. 98); *Ward* v. *D. & R. G. W. Ry. Co.*, supra (96 Utah 564, 85 P. 2d 837). This is not such a case.

> "The verdict here was admittedly liberal. But the mere fact that it was more than another jury, or more than this court, might have given, or even more than the evidence justified, does not conclusively show that it was the result of passion, prejudice or corruption on the part of the jury. * * *

> "The jury is allowed great latitude in assessing damages for personal injuries. *Miller* v. *So. P. Co.*, 82 Utah 46, 21 P. 2d 865. The present cost of living and the diminished purchasing power of the dollar may be taken into consideration when estimating damages. *Coke* v. *Timby*, 57 Utah 53, 192 P. 624; *McAfee* v. *Ogden Union Ry. & Depot Co.*, supra." (Italics added.)

If we follow the rule announced in these decisions we must determine whether the present verdict is so grossly excessive and disproportionate to the injury that it can be said from such fact alone, as a matter of law that the verdict must have been arrived at because of passion and prejudice. If this can be said from the amount of the verdict returned by the jury, then the trial judge abused

his discretion when he failed to conditionally grant a new trial.

Jurors in recent cases have returned very substantial verdicts, particularly where the injuries resulted in large wage losses, considerable medical costs, permanent disability, loss of bodily function, gross disfigurement, prolonged pain and suffering, or a combination of all such consequences. Courts in sustaining the verdicts have given consideration to those elements of damage, and in addition, to such factors as the decreased purchasing power of the dollar, the increased cost of living, the possible continuation of the present inflationary spiral, the social betterment of the individual, and the humiliation flowing from the loss of limbs or any other disfigurement.

It is impossible for a court to arrive at the monetary amounts which should be allowed for each and all of the elements of damage, but the trial judge may, in a general way, determine the amount the injury could award without overstepping the bounds of its province. ∎ The jury in this case could not reasonably find that plaintiff had suffered a large wage loss, as it was stipulated that this item amounted to $1,300; that plaintiff had incurred large medical costs, as the record is silent as to any payments for these services; that there was some form of permanent disability, as the operation was a strengthening operation for a previous incision and plaintiff returned to his work as switchman within approximately three months after the injury; that there was visible disfigurement, or that plaintiff would be subjected to prolonged mental and physical pain and suffering, as no such elements are proven. In connection with this last item, the most that can be claimed by plaintiff is that he was subjected to a hernia operation without complications or residual physical effects. Moreover, the pain and suffering he was subjected to was of short duration. Some six months after the operation, plaintiff's doctor testified,

no complaint was made as to any pain or discomfort from the operation.

We must assume that the jury awarded plaintiff the sum of $1,300 for loss of wages, which were his only established special damages, and this leaves the sum of $11,200 for general damages. When we get in this domain reasonable minds might differ as to what amount is excessive. However, there must be a limit beyond which a reasonable jury cannot go and the limit must be determined on the gross amount of the verdict and not the net amount. Conceding that jurors in different states and counties have different monetary standards and different ideas as to the value of pain and suffering; that present day costs of living are comparatively high; that the purchasing power of the dollar has decreased to approximately one-half of what it was ten years ago; that we are seemingly in an inflationary spiral; and, that by all reasonable standards verdicts should be larger than they were at that period; we are, nevertheless, of the opinion in this case that the damages awarded by the jury have no foundation in fact, and are so grossly excessive and exorbitant as to convince the members of this Court that the verdict is far in excess of what a reasonable jury could determine as the maximum amount awardable for this type of injury. For these reasons it appears to us to have been given under the influence of passion and prejudice.

Previously decided cases are of little value in fixing present day standards or in assisting courts in determining excessive awards. Both the court and jury are required to deal with many unknown factors and a good guess is about the best that can be hoped for. The permissible minimum and maximum limits within which a jury may operate for a given injury are presently far apart and must continue to be widespread so long as pain and suffering must be measured by money standards.

If the jurors award damages which all reasonable persons would conclude were not outside permissible limits, we cannot invade their province by substituting our judgment for theirs, but when we believe that all reasonable minds would conclude the limits have been exceeded we are permitted to correct the error.

In this instance we conclude there was an abuse of discretion and that a new trial should have been granted or a remittitur requested. However, our holding does not require that we reverse the judgment, in all events, as under our previously announced rulings we have the power to order a remission. See *Shephard* v. *Payne,* 60 Utah 140, 206 P. 1098, and *Falkenberg* v. *Neff,* 72 Utah 258, 269 P. 1008. In this case, we exercise that power.

It is ordered that the judgment appealed from be reversed and a new trial granted, with costs to appellant, unless respondent shall, within 15 days from the date of filing of this opinion, file in this court a remittitur in the sum of $4,000 and accept a net verdict of $5,000; if such remittitur be filed, the judgment then to be modified in accordance therewith, and as so modified, affirmed with no award of costs on appeal to either party.

WADE, WOLFE, and McDONOUGH, JJ., concur.

PRATT, Chief Justice (concurring and dissenting).

I am of the opinion that we should go farther than reduce the verdict in this case. We should grant the new trial without the privilege of accepting a reduced verdict.

It is contended by appellant that the trial court erred in giving instruction No. 16, in that the instruction as given permitted the jury to award damages to the plaintiff based upon future pain and suffering and future loss of bodily function when in fact there is no evidence indicating any

likelihood or probability or even possibility, that such pain and suffering would be occasioned to the plaintiff.

Instruction No. 16, as to this point reads as follows:

"* * * In determining the amount of such damages, you are instructed that plaintiff is entitled to compensation for all pain and suffering, if any, both mental and physical, which he has endured since the time he sustained his injuries and that he will probably endure in the future; in determining compensation for pain and suffering, if any, you may take into consideration its duration and its severity. The law furnishes no way by which to measure what is reasonable compensation for mental and physical pain and suffering, but it is left to the sound judgment and discretion of the jury trying the case to determine from a preponderance of the evidence what is reasonable compensation to compensate the plaintiff for any physical or mental pain and suffering he has endured or will probably endure in the future. * * *"

This court has laid down the rule in Utah relative to instructions on future pain and suffering in the case of *Picino* v. *Utah-Apex Mining Co.*, 52 Utah 338, 173 P. 900. 902, as follows:

"Some of these authorities apparently support appellants' contention, while others are clearly distinguished from the present case. We think there is a clear distinction between that which 'may happen' and that which 'will probably happen.' The former may imply a mere possibility, while the latter implies that which is likely to happen. This distinction, in effect, is recognized by many of the authorities. The rule invoked by appellants (reasonably certain rule) calls for a higher degree of certainty than is ordinarily required in civil cases. It is quite true [that] the jury should not be permitted to indulge in mere speculation in endeavoring to determine the rights of litigants. It does not follow, however, that because they cannot demonstrate their conclusions with mathematical precision that therefore their conclusions are invalid. Even in attempting to determine the damages already sustained in cases of this kind, jurors, in the very nature of things, are confronted with more or less uncertainty. That which is most likely, or that which is probable in the light of all the evidence, is oftentimes the only practical guide. If a higher degree of certainty than this is required, it is manifest that great hardship and injustice will result in many cases. Of course, the probability here referred to should not be a mere conjectural probability, but one based on evidence. The jury, whose duty it is to ascertain and declare the truth from conflicting testimony, should accept that which is probably true as against that which is less probable. In doing so the juror keeps within the law applicable to civil cases. He should accept that which he believes to be true, notwithstanding it may be more or less uncertain."

An annotation in 81 A. L. R. 423, collects and analyzes the cases adopting the different rules as to what degree of certainty should be included within the instructions to the jury.

The instruction given in this case was to the effect that the jury should determine from a preponderance of the evidence what is reasonable compensation for both mental and physical pain and suffering, if any, plaintiff "will probably endure" in the future. All references to future pain and suffering, or future loss of bodily function, in the instruction are couched in terms of what the plaintiff "will probably endure." Thus, the court has instructed substantially in the manner approved in the Picino case where the phrase under question was almost identical. The serious question raised by the appellant however, is not as to what type of instruction is proper as indicating the degree of proof necessary in order that a recovery for future pain and suffering may be granted, but rather is as to whether there was any evidence introduced in this case which would justify the court in giving any instruction at all on damages for future pain and suffering. It is the contention of the appellant that there is no evidence from which a jury could find future pain and suffering to justify the giving of an instruction which would allow the jury to even consider these items as an element of damages.

Dr. Anderson testified that in about 5 to 10% of the cases, incisional hernias follow operations; that he examined plaintiff December 15, 1947, and examined his abdomen and that it was completely healed and there were no complaints; that earlier, plaintiff had complained of pain which came chiefly because of the method of overlapping the fascia which was adopted in order to strengthen the closing of the incision, and that he would expect this pain to go away as the abdominal walls adjusted to the change. After this last operation the doctor considered plaintiff completely healed.

On the question of recurrence and future injury Dr. Anderson testified:

"A. In any hernia, the tendency to recur is considerable. This man developed a hernia from his incision. We wanted to safeguard any future development of hernia at this site, and that was the reason we imbricated or overlapped the fascia, to give us at least two or three lines of suturing so that it would be, I guess, 're-enforced,' you might call it if you were sewing up your pants."

"Q. What, in your opinion, might cause a recurrence in this case?"

"A. I believe the poor tissue, the poor fascia, the improper healing."

No evidence appears in the record of any pain and suffering after December 15, 1947, which was the date of the last examination of the plaintiff as a patient by Dr. Anderson. It may be helpful to fix the relationship of this date to the other dates in the case. December 15, 1947, was some six months after the plaintiff had returned to work; more than nine months after the second operation; six months before this action was filed; and more than nine months before the case was tried. The doctor's statement, based on his notes, with reference to the December 15th examination was,

"I examined his abdomen, completely healed, and there were no complaints."

It was stipulated that plaintiff had lost $1,300 in wages while away from his work after the second operation. The verdict of the jury was for $12,500. Of the total verdict $3,500 was deducted, by the jury, for contributory negligence of the plaintiff, leaving a net verdict of $9,000. If the jury followed the instructions as given, then they no doubt considered the question of future pain and suffering and future loss of bodily function, yet, as we have indicated, there is no evidence in the record to show any reasonable probability that plaintiff will undergo any future pain and suffering. Had there been evidence of pain and suffering at the time of trial, and a history of pain and suffering leading up to the time of trial, then possibly this instruc-

tion could be sustained, absent any testimony as to the likelihood of future pain and suffering, since it might then have been fairly inferable that future pain and suffering would result. *Loper* v. *Morrison,* 23 Cal. 2d 600, 145 P. 2d 1. Although there is also authority to the contrary, see: *Shulz* v. *Griffith,* 103 Iowa 150, 72 N. W. 445, 40 L. R. A. 117. As indicated, however, the record is silent as to any pain suffered at the time of trial or even several months before, and the doctor's testimony seems to negative the existence of pain or suffering after December 15, 1947. At the time this case was tried plaintiff had been back to work some 15 months, and there is not the slightest hint that he has suffered pain or inconvenience past the time it took for the abdominal walls to adjust and the ordinary post-operative effects to wear off.

If the injury to the plaintiff had been one of an objective nature, that is, one from which the permanency was obvious, and from which the jury in the exercise of common sense could say future pain and suffering would probably occur, then the instruction on future pain and suffering might be sustained absent any direct testimony. *Prettyman* v. *Tropkis,* (Del.) 9 W. W. Harris 568, 3 A. 2d 708. Had there been a loss of a member, or crippling of a member, or disfigurement, or anything of that nature, for example, the jury could, by observing the injury's existence, have inferred that future pain and suffering probably would occur. Nothing of this nature is presented, however, in the instant case. To the contrary, we have the evidence indicating a complete healing several months prior to this action, and that Duffy had returned to doing the same type of work as before and had been engaged for more than fifteen months at the time of trial.

The record in this case seems to bring the case fairly within the rule announced in 15 Am. Jur. 814, Sec. 375, as follows:

"The court cannot * * * properly give an instruction as to the recovery of damages for future pain and suffering, in the absence of any evidence to warrant it."

See also: *Wheeler* v. *City of Boone,* 108 Iowa 235, 78 N. W. 909, 44 L. R. A. 821; *Sherman* v. *Frank,* 63 Cal. App. 2d 278, 146 P. 2d 704; *Cookman* v. *Caldwell,* 64 Colo. 206, 170 P. 952; 25 C. J. S., Damages, p. 885, § 185. Whether the amount of proof may perhaps be of a lesser degree under the Picino case, supra, does not change the requirement that there must be evidence from which the jury could reasonably find that plaintiff will probably endure such pain and suffering, before such an instruction is authorized. No such evidence exists in this case, and therefore the instruction is erroneous.

The verdict in this case is excessive. I am at loss to account for it without concluding that the jury did consider the matter of future pain and suffering and gave considerable weight to those elements. In other words, the size of the verdict is rather convincing of the belief that the jury did consider these matters when they should not have done so; and included in their verdict a substantial sum based thereon. The defendant has been prejudiced by this erroneous instruction. To merely reduce the verdict is, I believe, assuming that the amount of the verdict would have been approximately the same as it was, had the jury not been instructed as to future pain and suffering—in other words, without considering future pain and suffering. We have no foundation for such an assumption.