2013 UT App 227

# THE UTAH COURT OF APPEALS

IN THE MATTER OF THE ESTATE OF DICK E. BASTIAN.

G. RICHARD BASTIAN, CHELSEA A. BASTIAN, AND
JESSICA C. BASTIAN,
Plaintiffs and Appellees,
*v.*
SUSAN L. BASTIAN AND MARIANN HAMBY,
Defendants and Appellants.

Memorandum Decision
No. 20120686-CA
Filed September 19, 2013

Fourth District, Provo Department
The Honorable Steven L. Hansen
No. 053400243

Douglas B. Thayer and Andrew V. Wright,
Attorneys for Appellants
Matthew G. Grimmer, Attorney for Appellees

JUDGE GREGORY K. ORME authored this Memorandum Decision,
in which JUDGES J. FREDERIC VOROS JR. and
MICHELE M. CHRISTIANSEN concurred.

ORME, Judge:

¶1     Susan Bastian and her daughter, Mariann Hamby, appeal from the trial court's decision to set aside a jury verdict against Chelsea and Jessica Bastian. We affirm.

¶2     Susan was appointed the personal representative for her deceased husband's estate. G. Richard "Gary" Bastian, the decedent's son from a previous marriage, intervened in the probate

proceedings and filed a wrongful death claim on behalf of himself and his four children alleging that Appellants had intentionally poisoned his father, causing his death. The trial court found no basis for the allegations, granted summary judgment in favor of Appellants, and dismissed the claim with prejudice. The trial court's order on that issue reprimanded both Gary and his attorney for continuing to advocate a wrongful death claim even after they knew, or should have known, that it lacked sufficient factual support. Gary and his attorney were the only ones identified in the order as being responsible for the claim and the only ones ordered to pay the appropriate sanction.

¶3    Appellants filed counterclaims against Gary and his four children for abuse of process, intentional infliction of emotional distress, and wrongful use of civil proceedings based on the filing of the wrongful death claim. Prior to trial, a motion in limine was brought by Gary and his children requesting that the individual plaintiffs be distinguished from one another at trial. The trial court denied the motion, determining that the word "Plaintiffs" would be used to collectively refer to Gary and all of his children, as opposed to "Plaintiff," which would be used to refer only to Gary to the exclusion of his children. The jury returned favorable verdicts on Appellants' counterclaims against Plaintiffs.

¶4    A few months later, Plaintiffs filed a motion to set aside the verdict as to Gary's four children.[1] The trial court heard oral argument on the issues and set aside the verdict as to all four of Gary's children. Appellants then filed a motion for reconsideration of the trial court's decision. The trial court again heard oral

---

1. Plaintiffs simultaneously filed a motion to amend the pleadings to conform to the evidence. The parties debate whether the motion was granted or withdrawn, and they argue about preservation of the issue for appeal. In view of our disposition of the pivotal issue raised by Appellants, the status of the motion to amend is of no practical consequence, and we decline to address it further. *See State v. Carter*, 776 P.2d 886, 888 (Utah 1989).

argument and ultimately denied Appellants' motion, reaffirming its prior decision to set aside the jury verdict as to the children.

¶5     Appellants ask this court to reinstate the verdicts against Gary's daughters, Jessica and Chelsea.[2] While a trial court's decision to set aside a verdict often arises in the context of a motion for a new trial, *see, e.g., Duffy v. Union Pac. R.R. Co.,* 218 P.2d 1080, 1083 (Utah 1950); *Andreason v. Aetna Cas. & Sur. Co.,* 848 P.2d 171, 174 (Utah Ct. App. 1993), in this case the trial court's intervention is more akin to entering a judgment notwithstanding the verdict. Accordingly, we grant the court no deference, reviewing for correctness. *See Neff v. Neff,* 2011 UT 6, ¶ 49, 247 P.3d 380.

¶6     Appellants asserted several claims against Plaintiffs, including Jessica and Chelsea, at trial: (1) wrongful use of civil proceedings, (2) abuse of process, and (3) intentional infliction of emotional distress. We will affirm the trial court's decision to set aside the verdict in this case only if we conclude that the evidence "so clearly preponderates in favor" of Jessica and Chelsea "that reasonable people would not differ on the outcome of the case." *See Hess v. Canberra Dev. Co.,* 2011 UT 22, ¶ 28, 254 P.3d 161 (footnote citation and internal quotation marks omitted). "[We will] review all of the evidence presented at trial in the light most favorable to the verdict to determine whether that evidence is sufficient to support the jury's verdict." *Id.* If the evidence supports the verdict, then we will reinstate the verdict and reverse the trial court's decision to set it aside. *See id.*

¶7     To prevail on their claims of wrongful use of civil proceedings, the jury instructions required Appellants to show that the person initiating or continuing the wrongful death claim did not "reasonably believe[] in the existence of the facts upon which the claim is based" and did not "correctly or reasonably believe[] that under those facts the claim may be valid under applicable

_____

2. Appellants do not challenge the trial court's decision to set aside the verdict as to the other two Bastian children, who are minors.

law." Appellants argue that two pieces of evidence support the jury's verdict that Jessica and Chelsea initiated or continued the wrongful death claim and that they did so knowing that the claim was invalid: (1) Jessica and Chelsea met with the attorney their father had hired to represent them in the probate matters during his investigation of the wrongful death claim and (2) Jessica and Chelsea were aware that their father thought something about their grandfather's death was suspicious.

¶8      We agree with Jessica and Chelsea that neither of these facts support the jury's verdict as to them. The record is devoid of any evidence that Jessica and Chelsea used the meetings with their attorney prior to the probate proceedings to encourage or initiate the filing of the wrongful death claim. And the most that their knowledge of their father's concerns can show is an awareness of a general dispute. Even viewing this evidence in the "light most favorable to the verdict," *id.*, it is insufficient.

¶9      Appellants have pointed us to no other evidence in support of the jury's verdict on these claims, and our review of the record reveals only evidence which cuts against the verdict, as both Jessica and Chelsea testified that they were not even aware of the wrongful death claim's existence. For example, when Jessica was asked if she knew that a claim had been filed against Appellants alleging they had killed her grandfather, she said she was not aware of any action and that all she knew was, "[W]e were trying to figure some things out. And that there was rubbing alcohol in his system at his time of death. And just really wanting to know why." When specifically asked, "Did [your father] ever . . . tell you that he was [filing the wrongful death claim] in your name? Making that suit in your name?," she replied, "No." She also testified that their attorney had never explained anything to her about the lawsuit, her father had never shown her any documents, and most of what she knew about the probate matters she had learned that day while sitting in trial.

¶10    Chelsea offered similar testimony. When asked what she knew about the issues being litigated, Chelsea replied that all she knew was that she was asked to come to court to help sort out some issues with her grandfather's will and that she did not "know details about it." When asked, "Were you ever told that your father was accusing [Appellants] of killing your grandpa?," she replied, "No." And no evidence was offered to show that Chelsea was aware that a wrongful death claim had been filed on her behalf. Because we determine that the jury's verdict was "clearly against the weight of the evidence," we conclude that the trial court did not err in setting the verdict aside on these claims. *See Crookston v. Fire Ins. Exch.*, 817 P.2d 789, 799 n.9 (Utah 1991).

¶11    To prevail on their abuse of process claims, the jury instructions required Appellants to establish at trial that Jessica and Chelsea initiated or maintained the claim for "a purpose for which it was not designed." Appellants were also required to show that Jessica and Chelsea furthered that improper purpose through "a willful act independent of the legal process." In other words, the jury must have had before it evidence that Jessica and Chelsea were involved in an act other than the filing of the wrongful death claim that was performed with the intent to misuse the legal system. We agree with Jessica and Chelsea that the evidence does not support the verdict on these claims. As discussed above, the evidence does not support the jury's verdict that they initiated or maintained the wrongful death claim. We are not aware of any evidence that was presented at trial of a "willful act independent of the legal process," and Appellants have failed to point us to any. The only actions Jessica and Chelsea seem to have taken are their appearances at trial and their brief respective meetings with their attorney. We determine this evidence to be insufficient. Even making every possible assumption about this evidence supporting the jury's verdict, neither of these acts constitutes a "willful act independent of the legal process," let alone an act that shows an intent to abuse the legal system.

¶12 Finally, we consider the jury's favorable verdicts on Appellants' claims of intentional infliction of emotional distress. According to the jury instructions, Appellants were required to show, among other things, that "an actor intentionally engaged in some conduct toward the claimant [i.e., the filing of the wrongful death claim] . . . with the purpose of inflicting emotional distress, or, where any reasonable person would have known that such would result." Having already determined that Jessica and Chelsea were not involved in the filing of the wrongful death claim, we never get to the question of whether Jessica and Chelsea filed it with the intent to inflict severe emotional distress upon Appellants.

¶13 We recognize that in setting aside the verdict against Jessica and Chelsea, the trial court seems to have contradicted its own prior ruling on the pretrial motion in limine to treat all Plaintiffs as being on the same legal footing. But because no evidence was actually admitted at trial that links any of the children to the filing of the wrongful death claim, we determine that setting aside the verdicts, as to the children only, was the correct course of action.

¶14 Affirmed.

————